UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re ) | | |
| SURGE TRANSPORTATION, INC.,[1] ) | Case No.: 3:23-bk-1712 | |
| Debtor. ) | Chapter 11 | |
| _____ ) | | |

CASE MANAGEMENT SUMMARY

Pursuant to Rule 2081-1(A)(3), Local Rules, United States Bankruptcy Court, Middle District of Florida, debtor, Surge Transportation, Inc. ("Surge" or "Debtor"), submits this Case Management Summary.

I.   **Overview and Events Leading to Chapter 11 Case.**

Founded in 2016 by Omar Singh, Surge is a Jacksonville based trucking/freight broker licensed with the U.S. Department of Transportation and the United States Federal Motor Carrier Safety Administration specializing in sourcing extra truckload capacity during peak seasons and other periods of high demand. The Debtor maintains satellite offices in Chicago, Illinois and Ashburn, Virginia.

Surge does not employ drivers directly nor maintain a fleet of equipment. The Debtor is instead a "digital" brokerage. Its business model is based on Application Programming Interface (or "API") pricing, a software-based approach to bidding on jobs

---

[1] The Federal Employer Identification Number of the Debtor is 81-224742. The principal address of the Debtor is 7077 Bonneval Road, Suite 550, Jacksonville, Florida 32216.

which permits real-time pricing and routing guide price optimization. API pricing allows the Debtor to instantly bid on a high number of jobs, matching customers with carriers at competitive rates.

The Debtor's customers are suppliers of consumer goods including large Fortune 1000 shippers and manufacturers like Kraft Heinz, Anheuser Busch, Dannon, Ace Hardware, and Chewy. Debtor has 60,000 motor carriers under contract. Of these carriers, the Debtor has active business with approximately 5,000 at any given time.

With its API model in place, Surge was well-positioned to leverage the supply-side stresses of the Covid-19 pandemic where on-line shopping spiked, resulting in suppliers scrambling to transport goods to distribution centers and then to end users. Surge experienced tremendous growth and prosperity during this period. For example, in 2020, the Debtor experienced 240% year-over-year sales growth, while in 2021, it experienced 260% year-over-year sales growth.

The dramatic increase in volume during the pandemic ended rather abruptly, however, beginning in April or May 2022 when inflation, the war in Ukraine and the easing of Covid-19 restrictions began to suppress product demand and increase the cost of shipping. Surge, like many others in the industry, did not anticipate the rapid change in the demand for shipping services and failed to reduce overhead in a timely fashion. As a result, Surge became increasingly delinquent in the payment of carrier claims to the point where accounts payable now total nearly $12 million owed to approximately 5,000 carriers. This reorganization was filed as a means of addressing those claims in an orderly fashion.

**II.     Corporate Structure**

The company is wholly owned by Omar Singh.

**III.    Officers and Directors.**

| Name | Position | Annual Salary |
|---|---|---|
| Omar Singh | President and Chief Executive Officer | $400,000 |
| John Mooney | Executive Vice-President | $230,000 |
| Jeannie Martinez | Director of Finance and Accounting | $180,000 |

**IV.     Financial Summaries[2]**

Surge's gross revenues and load volumes on a trailing twelve-month basis as of March of each year were as follows:

|  | 2021 | 2022 | 2023 |
|---|---|---|---|
| Gross Revenue | $73,160 | $200,081 | $135,422 |
| Net Revenue | $ 7,688 | $ 17,362 | $ 10,159 |
| *Margin %* | *10.5%* | *8.7%* | *7.5%* |
| Payroll @ Benefits | $ 3,653 | $ 9,279 | $ 9,263 |
| Licenses & Subscription | $ 169 | $ 965 | $ 1,807 |
| IT & Admin | $ 287 | $ 243 | $ 278 |
| Occupancy | $ 190 | $ 249 | $ . 295 |
| Advertising | $ 143 | $ 521 | $ . 784 |
| Insurance | $ 68 | $ 169 | $ . 231 |
| Professional Fees | $ 72 | $ 324 | $ . 328 |
| Bank & Quickpay | $ 78 | $ 878 | $ . 835 |
| Other G&A | $ 1,084 | $ 2,384 | $. 2,529 |
| **Pre-Tax Net Income** | **$ 1,944** | **$ 2,348** | **($ 6,191)** |
| Depreciation | -- | $ 313 | $ 593 |
| Net Interest Expense | $ 427 | $ 1,013 | $ 820 |

---

[2]    Unaudited.

| | | | |
|---|---|---|---|
| Pro Forma Adjustments | $  263 | $  1,142 | $  147 |
| **Pro Forma Adjusted EBITDA** | **$ 2,634** | **$ 4,815** | **($ 4,631)** |
| Adj EBIDA Margin % | *3.6%* | *2.4%* | *-3.4%* |

**Amounts Owed to Various Classes of Creditors.**[3]

    A.    **Secured Claims**

The Debtor has one primary secured lender, Triumph Financial Services LLC f/k/a Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph Capital"), which, among other things, purchases some but not all of the Debtor's accounts receivable arising from the Debtor's performance of brokerage services to its customers, pursuant to a Factoring and Security Agreement between the Debtor and Triumph Capital dated July 23, 2020 (as amended from time to time, the "Triumph Factoring Agreement"). Triumph Capital is a large, nationally known factoring company with deep experience and a strong reputation in the trucking brokerage industry. The Triumph Factoring Agreement allows the Debtor to take advances of up to $15 million based on the Debtor's receivables, which is secured by a blanket lien on all the Debtor's assets, including but not limited to accounts, personal property, contract rights, and tangible and intangible property.

Under the Factoring Agreement, Triumph purchases receivables from Surge at an agreed advance rate, which provides immediate cash liquidity to Surge. A small portion of each receivable, less applicable factoring fees, is held in a bookkeeping reserve until the underlying receivables have been collected. In addition to owning the receivable, Triumph

---

[3] Nothing contained herein is intended or should be construed as an admission as to the validity of any claims against the Debtor, and the Debtor reserves the right to contest any debt or claim listed.

retains a security interest in all of Surge's assets to secure payment of any recourse obligations which Triumph may have for disputed receivables and the like. On average, Surge factors up to $4,900,000 in receivables through Triumph on a monthly basis.

Triumph also provides factoring services for many of the carriers which provide services for Surge and may claim a security interest in Surge's assets for payment of those invoices under the dragnet provisions of the security agreement contained within the Factoring Agreement. The amount owed to Triumph on account of motor carrier factored receivables is approximately $1,260,000. Triumph's security interests, however extensive, have been perfected by the filing of UCC-1 Financial Statements in Florida and Virginia.

In addition to Triumph Capital, the Debtor is party to supply chain financing arrangements with several financers of its shippers (collectively, the "Direct Financers"). Under these arrangements, the shippers' lenders pay Surge on an expedited basis in exchange for an assignment of the receivable owed from the shipper to Surge. Like Triumph, the lending intermediary maintains a security interest in the receivables as a hedge against ineligible receivables as well as any attempts to recharacterize the transaction as a financing arrangement. Surge maintains arrangements with (i) Citibank, N.A. for Mondolez Global, LLC, (ii) JP Morgan Chase Bank, N.A. for Johnson & Johnson Services, Inc., and (iii) Bank of America for Proctor & Gamble Company. On average, Surge is contingently liable under the referenced supply chain financing arrangements to the tune of approximately $1,341,000. Each of these lenders has filed UCC-1 Financing Statements, and may therefore claim an interest in the Debtor's cash collateral. Debtor does not, however, anticipate utilizing any cash collateral or receivables owing to the Direct Financers.

B.     **Priority Claims**

Surge was current on its wages and payroll tax liabilities as of the Petition Date, though a payroll period will straddle the Petition Date. Debtor anticipates filing a motion for authority to pay the pre-petition portion of the payroll concomitantly with the petition. Surge does not believe it has any unpaid taxes owed to taxing and licensing authorities for sales and use taxes, which would be entitled to priority treatment under § 507(a)(8) of the Bankruptcy Code. Surge is not aware of any other potential priority claims.

C.     **Unsecured Claims**

Unsecured claims against the estate total approximately $12,000,000, the majority of which are owed to approximately 5,000 independent truckers and their factors. There is very little concentration of debt owed to the individual motor carriers, though many of the carriers use the same factoring companies resulting in an aggregation of debt with those factors.

D.     **Executory Contracts and Unexpired Leases**

Both of the Debtor's office facilities are leased. Surge outsources its international staffing needs pursuant to service agreements with Valovoo, LLC ("Valovoo") and Hubtex Maschinenbau GmbH & Co. KG ("Hubtex").

Most of the Debtor's payments to vendors are processed through Advance Business Capital LLC, d/b/a TriumphPay.com ("TriumphPay"), which is an affiliate of Triumph Capital, pursuant to a Payment Processing Agreement with TriumphPay dated January 22,

2018 (the "PPA").  The PPA allows the Debtor to have input on the priority and timing of payments to its carriers.

All additional executory contracts and unexpired leases will be set forth in Schedule G when filed.

### V. Employee Matters

As of the date of the filing, Surge employs approximately 43 full and part-time employees, with payroll obligations of approximately $155,000 per pay period.  The Debtor owes wages to its employees as of the Petition Date in the approximate amount of $155,000.

Surge's overseas operations are managed through service agreements with Valoroo and Hubtex, both of whom provide the employees to perform billing, account reconciliation and other "back office" services.  As of the Petition Date, Valoroo and Hubtex were owed approximately $173,000 and $96,482, respectively.

### VI. Reorganization Objectives

In an effort to return to profitability, Surge recently raised its rates and reduced its employee headcount and other overhead.  Those changes are expected to result in an increased profit margin, albeit on a reduced volume.  Though shippers have many options to place their shipments elsewhere, Surge's proprietary API system gives it an advantage over most other competing brokers.  Surge anticipates that even with a significant drop in volume margins will increase and Debtor will be profitable.

In addition, Surge has recently entered into an amendment to its Factoring Agreement with Triumph wherein advances on post-petition receivables factored through Triumph and non-factored receivables will be directed to TriumphPay, who will ensure that the transportation component of each post-petition receivable (factored or non-factored) is timely remitted to the underlying carrier, using to the extent possible, a "Quick Pay" process to get carriers paid faster.  This amendment and the associated Debtor-in-Possession financing should ensure that all post-petition carrier obligations are paid, with Surge being able to then develop a plan of reorganization to address the prepetition arrearages owed to its carriers and others from future revenue.

## VII.   Anticipated Relief Needed in First 14 Days

The Debtor anticipates filing the following motions in the two weeks of this Chapter 11 case:

- Debtor's Emergency Motion for (I) Approval of a Pre-Petition Factoring Agreement, as Revised, with Triumph Financial Services, LLC and (II) Approval of Debtor-in-Possession Financing and Adequate Protection;

- Emergency Motion for Authority to Pay Prepetition Wages, Payroll Taxes and Benefits to Non-Officer Employees;

- Motion to Pay Officer's Salary;

- Emergency Motion for Interim and Final Orders Authorizing (I) Interim Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Bank Account, (III) Continued Use of Elements of Existing Cash Management System Including Credit Card Account, and (IV) Continued Use of Business Forms;

- Motion for Interim Compensation Procedures of Professionals;

- Motion for an Order Pursuant to 11 U.S.C. § 105(c) and Rule 2002 Establishing Notice Procedures; and

- Application to Employ American Legal Claims Services, LLC as Noticing Agent.

    Stephen Leach (*hac vice* pending)
Kristen Burgers (*hac vice* pending)
David I. Swan (*hac vice* pending)
HIRSCHLER FLEISCHER
1676 International Drive, Suite 1350
Tysons, Virginia 22102-4940
(703) 584.8900
(703) 584.8901 Facsimile
sleach@hirschlerlaw.com
kburgers@hirschlerlaw.com
dswan@hirschlerlaw.com

-   AND   -

**THAMES | MARKEY**

    */s/ Richard R. Thames*
By _____
    Richard R. Thames
    Bradley R. Markey

Florida Bar No. 0718459
Florida Bar No. 0984213
50 N. Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358.4000
(904) 358.4001 Facsimile
rrt@thamesmarkey.law
brm@thamesmarkey.law

Proposed Attorneys for Surge Transportation, Inc.