**ORDERED.**

Dated: September 27, 2023

Jacob A. Brown
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re | ) | |
| SURGE TRANSPORTATION, INC.,[1] | ) | Case No.: 3:23-bk-1712-JAB |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

## ORDER GRANTING DEBTOR'S MOTION FOR CONTEMPT AND SANCTIONS AGAINST ADR LOGISTICS, LLC A/K/A ADR DISPATCH FOR ITS INTENTIONAL VIOLATION OF THE AUTOMATIC STAY

This Chapter 11 case came before the Court upon the motion filed by the debtor, Surge Transportation, Inc. ("Surge"), seeking sanctions and a finding of contempt against ADR Logistics, LLC, also known as ADR Dispatch ("ADR"), for violation of 11 U.S.C. § 362(a) (Doc. No. 119) (the "Motion"). A trial on the Motion was held September 13, 2023. Upon the evidence presented, the record from

---

[1] The Federal Employer Identification Number of Surge is 81-2242742. The principal address of Surge is 7077 Bonneval Road, Suite 150, Jacksonville, Florida 32216.

prior hearings, and this Court's prior orders in this case, the Court makes the following findings of fact and conclusions of law.[2]

### Findings of Fact

1. On July 24, 2023 (the "Petition Date"), Surge filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

2. The automatic stay applies as of the Petition Date and remains in effect until the case is close, dismissed, or a discharge is granted.[3]

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157.

4. The Court's Order Authorizing Debtor-In-Possession to Operate Business entered on July 25, 2023 permits Surge to continue in possession of its property and manage its business as debtor-in-possession, pursuant to 11 U.S.C. § 1108 and 11 U.S.C. § 1184 and Local Rule 2081−1.[4]

5. Surge is a Jacksonville based trucking/freight broker licensed with the U.S. Department of Transportation and the United States Federal Motor Carrier Safety Administration which specializes in sourcing extra truckload capacity during peak season periods and on short lead times. Surge maintains satellite offices in Chicago, Illinois and Ashburn, Virginia.

---

[2] *See* Fed. R. Bankr. P. 7052.
[3] *See* 11 U.S.C. § 362(a), (c)(2).
[4] Doc. No. 12.

6. Triumph Financial Services, LLC f/k/a Advance Business Capital LLC d/b/a Triumph Business Capital ("Triumph") is Surge's prepetition and post-petition factor and senior priority secured creditor.

7. Surge's customers are primarily suppliers of consumer goods and include numerous Fortune 1000 shippers and manufacturers like Kraft Heinz, Anheuser Busch, and Dannon. Surge also services a number of high-volume consignees like Ace Hardware and Chewy. Consignees differ from shippers in that they buy and receive products from manufacturers.

8. ADR is a motor carrier that, pre-petition, delivered truckloads of freight pursuant to agreements with Surge (Debtor's Ex. 8). As of the Petition Date, ADR held an unsecured claim against Surge for $5,575 in unpaid motor carrier delivery charges. (Debtor's Ex. 13).

9. After the Petition Date, ADR appears to have hatched a scheme to extort payment from Surge in order to coerce payment of ADR's prepetition claim.

10. On or about August 18, 2023, ADR, pretending to be willing to provide routine freight delivery services for Surge, picked up a load of perishable dairy product (the "Goods") from Darigold, Inc. Cold Storage Co. ("Darigold") in Portland, Oregon and agreed to immediately deliver the Goods to Harris Teeter in Greensboro, North Carolina. The Goods had a value of approximately $60,000 and, as dairy product, a limited shelf life. Surge and ADR agreed that ADR would be paid $7,500 for delivery of the Goods to Harris Teeter, and ADR was eligible to be paid in

full within three days of delivery, pursuant to the Triumph/Surge no fee QuickPay program.

11. Instead of heading to North Carolina, however, ADR took the load "hostage" at its facility in Portland, Oregon, and refused to deliver the Goods unless Surge paid ADR's pre-petition claim. On Saturday morning, August 19, 2023 at 8:25 a.m., ADR sent Surge its first ransom e-mail:

> "The shipment in the subject line is in our yard and is not going anywhere until the following loads are paid for to us in certified fund [sic] such as express code.
>
> These are the loads we need payment on. No exceptions or excuses will be accepted.
>
> 10247628 - $5,325
> 10255442 - $250"

(Debtor's Ex. 1, p. 10).

The two loads listed above were delivered pre-petition, and the $5,575 claimed by ADR against Surge is a general unsecured pre-petition claim.

12. In its continued effort to pressure Surge, ADR followed its initial threat four hours later with a second email asserting a $1,000 daily storage fee for the Goods it was holding hostage post-petition. (Debtor's Ex. 1, p. 9). The e-mail was followed by another e-mail at 1:54 p.m. that same day of August 19, 2023, stating "You either solve this with us directly or we get everyone involved, but it will be solved . . . You pay us for unpaid loads is the only way this goes." (Debtor's Ex. 1, p. 9).

13. The next day, Sunday, August 20, 2023 Surge sent a demand to ADR that it timely deliver the Goods as required by the post-petition Rate Confirmation Agreement. The denial specifically stated "Surge Transportation has filed for Chapter 11 bankruptcy as of Monday, July 24, 2023 at 8:31 pm EST." (Debtor's Ex. 1, p. 8). In response, ADR sent Surge no less than nine (9) e-mails in a three (3) hour period on Sunday afternoon, making multiple demands and threats, for example:

>    a. "Yea been through this before. You pay us what is owed that is how it will work" (12:45 p.m.)
>
>    b. "You pay us for unpaid loads is the only way this goes" (1:54 p.m.)
>
>    c. ". . . we don't care what chapter you filled [sic] you must pay us what is owed" (2:15 p.m.)
>
>    d. "The load will not be released until you pay us for our previously hauled load which is not paid for." (2:21 p.m.)
>
>    (Debtor's Ex. 1, pp. 7-8).

This is just a sample of the threatening communications from ADR to Surge on Sunday afternoon, August 20, 2023.

14. On the morning of Monday, August 21, 2023, Surge sent a letter to ADR with notice that its conduct violated the automatic stay. The letter warned ADR that if it did "not deliver the load as required by the terms of your contract, then Surge will bring this situation to the attention of the Bankruptcy Court and ask the Court to impose sanctions against you for willfully violating the automatic stay."

(Debtor's Ex. 1, p. 5). Surge also explained, again, to ADR that it would be paid on the post-petition load it was holding hostage, if delivered, within three days via the no fee QuickPay system established under this Court's Order Approving Debtor-In-Possession Financing and Pre-Petition Factoring and Security Agreement with Triumph Financial Services, LLC entered on July 27, 2023.[5]

15. Instead of acknowledging the bankruptcy stay, ADR chose to respond to the letter with defiance and threatened to damage Surge's valuable relationships with Darigold and Harris Teeter by letting them know the Goods were in peril:

> "PAY OUR UNPAID ORDERS, LOAD IS STILL IN PORTLAND WE WILL NOT WORK FOR YOU AND WE WILL NOT WORK FREE.
>
> ***YOUR BANKRUPTCY MEANS NOTHING*** BECAUSE WE TRIED TO GET A HOLD OF YOUR BOND COMPANY AND ALL THE INFO PROVIDED WE WERE NEVER ABLE TO DO SO THIS ALL HAPPENED WAY BEFORE BANKRUPTCY.
>
> THIS IS OUR LAST EMAIL BEFORE WE GO TO CUSTOMERS TO NOTIFY THEM OF THEIR LOAD."
>
> (Debtor's Ex. 1, p. 5; Emphasis added).

16. Based on the foregoing exchanges, the Court finds that ADR had actual knowledge of the bankruptcy filing at the time it was holding the subject load hostage.

---

[5] Doc. No. 40.

17. After receiving the e-mails, Surge turned to Danny Mourning, Triumph's associate general counsel, who often has been able to diffuse matters that have escalated to this point. In an e-mail on August 21, 2023 at 11:36 a.m., Mr. Mourning confirmed to ADR that the post-petition load was eligible for QuickPay, if delivered; and if not delivered, "this matter is likely to go before the Court on a motion to hold you in contempt." (Debtor's Ex. 1, p. 4).

18. This was the second warning to ADR that it was violating the automatic stay imposed as of the Petition Date by operation of 11 U.S.C. § 362, but ADR remained defiant. Just five minutes later ADR <u>repeated</u> its hostage demand:

> "In order for us to move the truck the previous orders have to be paid off so 3 total orders have to be paid off.
>
> > 10247628 - $5,325
> > 10255442 - $250
>
> If you want the load back in Portland, OR which is where the load is, you will pay the unpaid orders and incurred storage fees, the longer the higher."
>
> (Debtor's Ex. 1, p. 3).

19. In further escalation, ADR next notified Harris Teeter that the load had been abandoned. (Debtor's Ex. 1, p. 2). This act is significant because abandonment, coupled with non-delivery of the perishable goods, is not an insurable event, meaning Surge was potentially exposed to Darigold for the entire $60,000 load.

20. On the afternoon of August 22, 2023, Darigold offered to pay ADR directly for the shipment and to bypass Surge, but ADR refused because that would not result in ADR's primary goal of getting its pre-petition claim paid. (Debtor's Ex. 3).

21. After being copied on this latest e-mail correspondence, Surge's counsel gave ADR warning that it was facing a contempt motion, unless it released the load and reimbursed the estate for damages. Surge's counsel also offered to discuss the matter with an attorney for ADR, should it choose to engage one. (Debtor's Ex. 1, p. 1). ADR's response referred to Surge's warning as "nonsense." (Debtor's Ex. 1).

22. Meanwhile, the only thing Surge could do to preserve a $60,000 load of perishable product still sitting in Oregon, and try to protect its customer relationship, was to pay ADR's ransom. ADR forced Surge to pay the entire amount of $13,025, including $7,500 for the post-petition load fee and $5,525 for the pre-petition claim. Only then did ADR agree to move the load from Oregon to North Carolina.

23. When the Goods were finally delivered by ADR on Sunday, August 27, 2023, Harris Teeter rejected them as ADR had failed to properly wrap or stack the Goods on pallets. Harris Teeter then asked Surge to have the Goods taken to a storage facility to be restacked and rewrapped. This forced Surge to pay an additional $926 restack/rewrap fee.

24. When the Goods were redelivered by ADR on Monday, August 28, 2023, Harris Teeter rejected them again. Finally, on Tuesday, August 29, 2023, Harris Teeter agreed to accept the product.

25. Even after the Goods were accepted, ADR continued to make claims against Surge and Darigold, including additional mileage layover charges of $400 per day, and a "lumper" or labor fee for unloading the cargo. (Debtor's Ex. 1).

26. The Motion was filed and electronically served on ADR on September 6, 2023. (Debtor's Ex. 6). ADR responded to the service e-mail with "GET LOST." (Debtor's Ex. 6). ADR clearly had notice of the Motion.

27. On September 7, 2023, the Order Scheduling Trial of the Motion on September 13, 2023 was entered and served on ADR. (Debtor's Ex. 7). ADR responded to the electronic service with "Get out of here with this bullshit." (Debtor's Ex. 7). ADR clearly had notice of the September 13, 2023 trial.

28. Despite adequate notice, ADR did not appear through counsel or otherwise at the September 13, 2023 trial.

29. At the trial on September 13, 2023, this Court admitted thirteen exhibits relating to ADR's communications and behavior and credible testimony from Paul Smith, the Director of Operations for Surge, about ADR's willful and egregious conduct.

30. Darigold is a valuable customer of Surge. In the two-year period preceding the Petition Date, Darigold generated $3,278,166.08 in revenues for Surge. (Debtor's Ex. 10).

31. Based on the foregoing, the Court finds ADR's actions in, *inter alia*, holding the subject load hostage and in contacting Darigold constitute a willful and egregious violation of 11 U.S.C. §§ 362(a)(3) and (a)(6).

## Conclusions of Law

32. The automatic stay of 11 U.S.C. § 362 is one of the most important protections available to debtors and is necessary for a successful reorganization.[6]

33. Surge's contract rights, goodwill, reputation, and customer relationships are key assets of the estate.[7]

34. In *In re Jotan, Inc.*, the court held that intangibles, like goodwill and the reputation of a debtor in Chapter 11, are assets of the estate, interference with which is a violation of the automatic stay:

> The Court notes at the outset of its discussion that the goodwill and reputation of a corporation in Chapter 11, to the extent that there is one, is property of the bankruptcy estate. . .. Parties interfering with or trying to take away from such goodwill and reputation are in violation of the automatic stay afforded to debtors seeking

---

[6] *In re Briskey*, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001) ("The automatic stay is necessary to permit the debtor breathing space so that he may reorganize his affairs. [T]he automatic stay is necessarily broad so that debtors may reorganize their affairs in an orderly and equitable fashion").
[7] *See* 11. U.S.C. 541.

>bankruptcy relief and subject to this Court's authority with respect to violations of that stay.[8]

35. Protecting customer relationships and goodwill are critical not only to Surge's current operations, but also to the viability of a Chapter 11 plan or a sale of the business.[9] The automatic stay thus prohibits carriers like ADR from demanding payment on pre-petition debts owed by a Chapter 11 freight broker debtor from its shipping customers.

36. Dispatchers and carriers must also be strongly discouraged from self-help. If ADR were to escape responsibility for its conduct, other carriers may be encouraged to do the same. Additionally, shippers may cease to place orders with Surge over concerns their products will be held hostage or lost altogether. This would undermine Surge's prospect of a successful reorganization, which not only impacts Surge, but creditors of the estate.

37. ADR's conduct was entirely in bad faith and blatant disregard for the automatic stay. Surge and Triumph gave ADR multiple warnings and opportunities to follow the law and correct its misbehavior and ADR refused to do so. Accordingly, sanctions against ADR are warranted.

38. Because of § 362(a)'s central role in the administration of the Code, it is vital the bankruptcy court has tools at its disposal to enforce it, including contempt:

---

[8] *In re Jotan, Inc.*, 229 B.R. 218, 221 (Bankr. M.D. Fla. 1998).
[9] *Id.*, at 222.

> It is quite evident and obvious that the only way the bankruptcy court can put teeth into its power to enforce the automatic stay is through the threat of contempt proceedings. The court must have a way to enforce its own orders and a contempt order is an appropriate way to carry out the purpose of the automatic stay provision of the Code.[10]

39. A contempt order and the levying of sanctions is therefore appropriate to enforce the automatic stay and to further advance its goal of providing "the debtor a breathing spell from his creditors."[11]

40. This Court also has the authority under 11 U.S.C. § 105(a) to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of the title."[12] ADR's willful and blatant disregard of the automatic stay is well within the Court's authority to grant contempt against ADR, and sanctions are necessary to further enforce 11 U.S.C. § 362.

Upon the foregoing Findings of Fact and Conclusions of Law, it is

**ORDERED:**

1. The Motion is Granted.

2. ADR Logistics clearly and willfully violated the automatic stay imposed by 11 U.S.C. § 362(a).

---

[10] *In re Crum*, 55 B.R. 455, 458 (Bankr. M.D. Fla. 1985).
[11] *Malloy v. Phillips*, 197 B.R. 721, 722 (M.D. Ga. 1996).
[12] *See* 11 U.S.C. § 105(a).

3. In addition to violating the automatic stay, ADR Logistics breached its August 18, 2023 post-petition broker-carrier agreement with Surge to deliver goods to Harris Teeter.

4. ADR Logistics is ordered to refund $5,575 to Surge within three (3) days of the entry of this Order.

5. ADR Logistics is further ordered to refund to Surge the additional $7,500 which it received for post-petition fees within fourteen (14) days of the entry of this Order.

6. ADR Logistics' representative who sent the emails referenced in this Order is ordered to appear in person and with counsel admitted before this Court on **October 25, 2023, at 1:30 p.m.**[13] to show cause why additional sanctions, including reimbursement of Surge's attorney fees, should not be imposed. The hearing will be held in Courtroom 4C, 4th Floor, Bryan Simpson United States Courthouse, 300, North Hogan Street, Jacksonville, Florida 32202. Zoom appearances will not be permitted.

7. At the hearing on October 25, 2023, the Court will also address damages for ADR Logistics' breach of the post-petition broker-carrier agreement.

8. ADR Logistics shall file a written brief prior to the October 25, 2023, hearing apprising the Court of its compliance with the terms of this Order and to

---

[13] The Court originally scheduled this hearing for October 3, 2023 but is rescheduling it to allow time for ADR to comply with this Order before the subsequent hearing now to be held on October 25, 2023 at 1:30 p.m.

provide any facts and law it relies on for mitigating against an award of additional sanctions.

Bradley R. Markey, Esq. is directed to serve a copy of this Order on the "Short List" of creditors and interested parties who are non-CM/ECF users and file a proof of service within three days of entry of the Order.