# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## <u>JACKSONVILLE DIVISION</u>

In re                   )

SURGE TRANSPORTATION, INC.,[1]    )      Case No.:  3:23-bk-1712-JAB

                Debtor.      )      Chapter 11

_____ )

## <u>AMENDED CHAPTER 11 PLAN OF REORGANIZATION</u>

### (June 13, 2024)

Richard R. Thames, Esq.
Bradley R. Markey, Esq.
**THAMES | MARKEY**
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000

- and -

Stephen Leach, Esq.
David I. Swan, Esq.
**HIRSCHLER FLEISCHER**
1676 International Drive, Suite 1350
Tysons, Virginia 22102-4940
(703) 584-8900

Attorneys for Surge Transportation, Inc.

---

[1]     The Federal Employer Identification Number of the Debtor is 81-224742.  The principal address of the Debtor is 7077 Bonneval Road, Suite 550, Jacksonville, Florida 32216.

# Article I

# Introduction

Debtor, Surge Transportation, Inc. ("Surge" or "Debtor"), proposes this Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of 11 U.S.C. § 1123.

# Article II

# Definitions

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply in construction of this Plan.

**2.1** **Administrative Expense.** Means (a) any cost or expense of administration of the Bankruptcy Case under § 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estate or operating the business of Debtor, (2) a post-petition cost, indebtedness or contractual obligation duty and validly incurred or assumed by Debtor in the ordinary course of business, (3) a payment that is to be made under this Plan to cure defaults on executory contracts and unexpired leases, and (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under §§ 330(a) or 331 of the Bankruptcy Code, and (b) any fee or charge assessed against the Estate under 28 U.S.C. § 1930.

**2.2** **Allowed Claim.** A right against Debtor within the meaning of § 101(5) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Rule 3003 or scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Filing Date, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture.

      **2.3**    **Allowed Amount.**  The dollar amount in which a Claim is allowed.  No amount shall be allowed for or on account of punitive damages, penalties or post-petition interest on account of any Claim except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

      **2.4**    **Allowed Interest.**  A right against Debtor or an equity security holder of Debtor in respect of which a proof of interest has been filed with Court within the applicable period of limitation fixed by Rule 3003 or scheduled in a list of equity security holders prepared or filed with the Court pursuant to Rule 1007(b) and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending.

      **2.5**    **Allowed Secured Claim.**  An Allowed Claim against Debtor for which a claimant asserts and is determined to hold a valid, perfected and enforceable lien, security interest or other interest of encumbrance in property in which Debtor had an interest and which is not otherwise subject to avoidance or the equitable powers of the Bankruptcy Court under applicable bankruptcy law or non-bankruptcy law, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the claimant's interest in Debtor's interest in the property.  But for the Claim of Triumph, an Allowed Secured Claim shall not include post-petition attorney fees and costs unless such fees and costs have been approved and allowed by Final Order prior to the Confirmation Date.

      **2.6**    **Allowed Unsecured Claim.**  An Allowed Claim for which a claimant has not asserted or is determined by a Final Order not to hold an Allowed Secured Claim or a Claim entitled to priority under the Bankruptcy Code.

      **2.7**    **Avoidance Actions.**  Any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of Debtor, or their Estate under the Bankruptcy Code or applicable non bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

      **2.8**    **Ballot.**  The form or forms distributed to claimants in impaired classes on which such persons may indicate the acceptance or rejection of the Plan.

      **2.9**    **Bar Date.**  The date fixed by court order for filing proofs of claim or interests.  The Bar Date in this case is October 2, 2023.

      **2.10**    **Causes of Action.**  All causes of action of any kind held at any time by Debtor against any party or parties, including, without limitation, all causes of action held by Debtor as of the Filing Date, all causes of action held by Debtor arising after the Filing Date, including, without limitation, claims against former employees of Debtor and their

[825440/3]

employers and any other claims described in the Disclosure Statement, and any rights arising under §§ 362(b), 542, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code.

**2.11    Claim.**  A right against Debtor within the meaning of § 101(5) of the Bankruptcy Code, including any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, secured or unsecured.

**2.12    Class.**  A category of Claims or Interests, as classified in this Plan.

**2.13    Confirmation Date.**  The date upon which the Bankruptcy Court, pursuant to § 1129 of the Bankruptcy Code, enters an order confirming the Plan in accordance with the appropriate provisions of Chapter 11 of the Bankruptcy Code.

**2.14    Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

**2.15    Court.**  The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, or any other court having original or appellate jurisdiction over this case.

**2.16    Debtor.**  Surge Transportation, Inc.

**2.17    (The) Declaratory Relief Actions.**  The adversary proceedings disputing ownership and entitlement to the transportation components of invoices which Debtor factored through Triumph Financial Services, Inc., styled as:

    a.    *OTR Capital, LLC v. Triumph Financial Services, LLC*; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Adversary Case No.: 3:23-ap-00080-JAB;

    b.    *Alexander Winton & Associates, Inc. v. Triumph Financial Services, LLC*; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Adversary Case No.: 3:23-ap-00081-JAB;

    c.    *Baxter Bailey & Associates, Inc. v. Triumph Financial Services, LLC*; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Adversary Case No.: 3:23-ap-00082-JAB; and

    d.    *Phoenix Capital Group, LLC, Wex Bank, Integra Funding Solutions, LLC, Yankton Factoring, Inc. and iThrive Financial, LLC v. Surge Transportation, Inc. and Triumph Financial Services, LLC f/k/a Advance Business Capital, LLC*

*d/b/a Triumph Business Capital*; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Adversary Case No.: 3:23-ap-00085-JAB.

**2.18** **Disclosure Statement.** The Disclosure Statement filed with the Court, including exhibits and any supplements, amendments or modifications thereto, prepared pursuant to 11 U.S.C. § 1125(a) and 1126(b) and Rule 3018(b) for solicitation and acceptance of this Plan.

**2.19** **Disputed Claim.** A Claim that has not been allowed by a Final Order of the bankruptcy court as to which (a) a Proof of Claim has been filed with the Court, or is deemed filed under applicable law or order of the Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Court or (3) granted in whole or part by a Final Order of the Court. For purposes of this Plan, a Claim that has not been allowed by a Final Order of the Court shall also be considered a "Disputed Claim", whether or not an objection has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the bankruptcy court, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (iii) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent or unliquidated, (iv) no corresponding Claim has been scheduled in the Schedules or (v) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

**2.20** **Distribution Record Date.** The record date for determining the entitlement of Holders of Claims to receive distributions under this Plan on account of Allowed Claims. The Distribution Record Date shall be seven (7) days before the Confirmation Date.

**2.21** **Effective Date.** The Effective Date of the Plan shall be the first day of the month following the date upon which the Confirmation Order is no longer subject to rehearing, appeal or certiorari proceedings, or such other earlier date as Debtor shall designate in a written notice filed with the Bankruptcy Court.

**2.22** **Estate.** The estate of the Debtor in this Chapter 11 case, created pursuant to § 541 of the Bankruptcy Code.

**2.23** **Executory Contract or Unexpired Lease.** A contract or lease to which Debtor is a party that is subject to assumption, assumption and assignment, or rejection under § 365 of the Bankruptcy Code.

**2.24** **Exit Facility Collateral.** As defined in Section 5.1.

[825440/3]

**2.25**    **Exit Loan Facility.**    The Exit Loan Facility between the Debtor and Triumph.

**2.26**    **Factoring Agreement.**    The Factoring and Security Agreement between Triumph and Surge dated June 23, 2020, as amended, supplemented or restated.

**2.27**    **Final DIP Financing Order.**    The Final Order Approving Debtor-in-Possession Financing and Pre-Petition Factoring and Security Agreement with Triumph Financial Services, LLC dated August 29, 2023 (Docket No. 112).

**2.28**    **Final Order.**    An order or judgment of the Bankruptcy Court as entered on the docket in this Chapter 11 case, the operation or effect of which has not been stayed, reversed or amended.

**2.29**    **General Unsecured Claims.**    Any claim other than an Administrative Expense, Priority Claim or a Secured Claim and includes (a) the deficiency portion of an undersecured Claim, (b) the Claims of Insiders, and (c) any Claims for contract or lease rejection damages.

**2.30**    **Holder.**    Any Entity holding a Claim against Debtor.

**2.31**    **Impaired Class.**    A class of Claims or Interests which is not unimpaired under § 1124 of the Bankruptcy Code.

**2.32**    **Initial Distribution Date.**    The date which is ninety (90) days following the funding of the Exit Loan Facility.

**2.33**    **Payment Procedures Order.**    The Order (I) Authorizing Release and Discharge of Customers, and (II) Barring Carriers from Asserting Direct Claims Against Debtor's Customers dated October 13, 2023 (Docket No. 226).

**2.34**    **Person.**    An individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership or other business entity.

**2.35**    **Petition Date.**    July 24, 2023, the date on which Debtor filed its voluntary petition for reorganization.

**2.36**    **(The) Plaintiffs.**    The Plaintiffs in the Declaratory Relief Actions.

**2.37**    **Plan.**    This Plan of Reorganization in its present form or as may be amended or supplemented.

**2.38**    **Priority Claims.**    Any pre-petition claim entitled to priority pursuant to § 507(a) of the Bankruptcy Code other than Administrative Expenses.

[825440/3]

**2.39** **Priority Tax Claim.** A Claim arising under federal, state or local tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**2.40** **Proof of Claim.** Any proof of claim filed with the Court with respect to Debtor pursuant to Rules 3001 or 3002.

**2.41** **Property.** The personal property (both tangible and intangible) owned by Debtor.

**2.42** **Rules.** The Federal Rules of Bankruptcy Procedure, as adopted by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075, and the Local Bankruptcy Rules as adopted by the bankruptcy court for the Middle District of Florida.

**2.43** **Schedules.** The schedules, as amended, of assets and liabilities, lists and statements of financial affairs and executory contracts filed with the Bankruptcy Court by Debtor under Rule 1007.

**2.44** **Secured Claim.** The claim of any creditor who holds a lien, security interest or other security as that term is defined by § 101(49)(A) of the Bankruptcy Code and which has been properly perfected by the applicable law and determined in accordance with Section 506 of the Bankruptcy Code with respect to the property owned by Debtor.

**2.45** **Secured Creditor.** Any creditor that is a holder of a Secured Claim.

**2.46** **Triumph.** Triumph Financial Services, Inc., including any affiliates, parent, successor, or assigns, including, but not limited to, TriumphPay.

**2.47** **Triumph's Allowed Secured Claim.** The remaining balance of Triumph's Allowed Claim against Debtor for which Triumph holds a valid, perfected and enforceable security interest or other interest in property in which Debtor had an interest, inclusive of prepetition attorney fees and costs incurred by Triumph, in the amount of $33,980.

**2.48** **Triumph's Unsecured Claim.** The Allowed Claim against Debtor for which Triumph does not hold a valid, perfected and enforceable security interest or to which it has otherwise waived such security, totaling the aggregate amount of $1,463,299.83, as evidenced by Claim No. 663-1.

**2.49** **Undefined Term.** A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure has the meaning given to that term in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

**2.50** **Unsecured Creditor.** Any creditor that is a holder of an Unsecured Claim.

## Article III

## Construction

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice-versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations. In the event of any inconsistency between the language of this Plan and any settlement agreement, the terms of the Plan shall control.

## Article IV

## Classification and Treatment of Claims and Interests

The table below summarizes the classification of Claims against and Interests in Debtor for all purposes under this Plan, including voting, confirmation and distributions. In accordance with § 1123(a)(1) of the Bankruptcy Code, Debtor has not classified Administrative Claims, Professional Fee Claims and Priority Tax Claims, and such Claims shall be paid in the manner described in Article VI below.

This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class, other than for voting purposes, only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Creditor | Status | Voting Rights |
|-------|----------|--------|---------------|
| N/A | Administrative | N/A | No |
| N/A | Priority Tax Claims | N/A | No |
| 1 | Triumph Financial Services | Impaired | Yes |
| 2 | Factoring Claims | Impaired | Yes |

| Class | Creditor | Status | Voting Rights |
|-------|----------|--------|---------------|
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Equity Interests | Unimpaired | No |

## Article V

## Means of Implementation

The Plan will be funded by the Exit Loan Facility and the proceeds of any Avoidance Actions which the Debtor chooses to pursue. The Exit Loan Facility will enable the Debtor to fund distributions to creditors under the Plan and to settle certain adversary proceedings described below. The proceeds of Avoidance Actions will enable the Debtor to make a supplemental distribution to Unsecured Creditors.

**5.1    The Exit Loan Facility.** The Plan will primarily be funded by a new loan from Triumph to the Debtor in the amount of $2,150,000, secured by (i) a blanket lien on all Assets of the Debtor, existing on and after the Confirmation Date, but excluding Avoidance Actions, and (ii) a mortgage and security interest in the real property and improvements located at (a) 20651 Holyoke Drive, Ashburn, Virginia, and (b) 44390 Cedar Heights Drive, Ashburn, Virginia (the "Exit Facility Collateral"). The proceeds of the Exit Loan Facility will be utilized to fund settlements of the Declaratory Relief Actions for $350,000, with the remaining funds being utilized to fund, in order of priority, operations (capped at $400,000 in total), distributions to Allowed Administrative Claims, Priority Tax Claims, and to make an initial pro-rata distribution to Allowed Claims of Unsecured Creditors in Classes 2 and 3. The Exit Loan Facility will be amortized and paid by the reorganized Debtor over seven years with no interest, secured by the Exit Facility Collateral, and documented in the form of a Secured Promissory Note and Deeds of Trust to secure the real estate. It is anticipated that $150,000 of the Exit Loan Facility will be disbursed to Debtor in advance of the Confirmation Hearing as a bridge loan to fund operations. The Exit Loan Facility is conditioned upon the entry of a Confirmation Order, which (i) approves the settlement and compromise of the Declaratory Relief Actions, as set forth in Article 5.2 below; (ii) approves the Debtor's assumption of the Factoring Agreement; and (iii) allows the Debtor to execute the Secured Promissory Note, form and substance acceptable to Triumph.

**5.2    Settlement of the Declaratory Relief Actions.** While the Bankruptcy Court entered the Payment Procedures Order, which included a temporary injunction against freight carriers preventing them from seeking to collect pre-petition claims against the Debtor's suppliers and consignees, the Bankruptcy Court allowed the Declaratory Relief Actions to continue and referred all of the parties to mediation, to resolve the Declaratory Relief Actions and agree upon the terms of a Chapter 11 Plan. Though no

[825440/4]

agreement was reached at the mediation, the framework for a plan of reorganization pursuant to which Triumph will provide exit financing to the Debtor was discussed. The Debtor will, however, be unable to obtain exit financing from Triumph or any other source if the Declaratory Relief Actions are not dismissed. In the absence of such funding, the prospects for a distribution to general unsecured creditors is low. Surge, Triumph and the Plaintiffs have therefore agreed as follows:

      a.     In exchange for a full release of their pre-petition claims against Triumph and the Debtor, the Plaintiffs will each be allowed a General Unsecured Claim in the amounts claimed in the Declaratory Relief Actions, to share in the pro-rata distributions to Unsecured Creditors under the Plan, plus an additional $350,000 (the "Settlement Payment"), allocated as follows:[2]

      i.     $326,000 to AWA, BBA and OTR, to be allocated between and among them at their discretion; and

      ii.     $24,000 to Phoenix, Wex, Integra, Yankton, and IThrive, to be allocated among them at their discretion.

      b.     Payment of the Settlement Payment shall be made within fourteen (14) days of the satisfaction of the conditions precedent outlined in Article XVI hereof, provided, however, that it shall not be an event of default if substantial progress is being made towards closing of the Exit Loan Facility at that time.

      c.     In exchange for said payments, the Plaintiffs shall be deemed to have waived their right to seek or obtain a "substantial contribution claim" under § 503(b)(4) of the Bankruptcy Code.

      d.     Triumph, for its part, will receive no distribution on account of Triumph's Unsecured Claim from the Exit Loan Facility, and Triumph's Unsecured Claim shall instead be reduced and paid by Omar Singh (as guarantor of the Prepetition Factoring Agreement) post-confirmation in accordance with the Secured Promissory Note.

      e.     The Declaratory Relief Actions shall be dismissed, with prejudice, concurrently with the funding of the Settlement Payment.

This Plan is deemed to be a motion under §§ 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 for approval of the compromise and settlement of the Declaratory Relief Actions as outlined above, and the confirmation of the Plan shall constitute approval of the settlement and compromise by the Bankruptcy Court. The

---

[2] The original compromise with the Plaintiffs contemplated a Settlement Payment of $400,000. The Plaintiffs have agreed to accept a reduced Settlement Payment of $350,000 to help address Plan feasibility issues.

[825440/4]

Confirmation Order will contain findings and supporting and conclusions approving the compromise and settlement as fair and equitable and within the bounds of reasonableness.

**5.3    Avoidance Actions.** The Plan will also be funded by the proceeds of Avoidance Actions pursued by the Debtor, net of all costs, expenses, and attorney fees incurred in connection therewith and/or deferred by Debtor's professionals outlined in Section 6.2 of this Plan. The Debtor will make a supplemental pro-rata distribution to the Holders of Allowed Claims in Classes 2 and 3 after all of the Avoidance Actions have been adjudicated or settled. As set forth in Section 7.2 of this Plan, Factors may elect to receive a release from an Avoidance Action in exchange for (i) a 30% reduction of their Allowed Unsecured Claim, and (ii) a commitment to permit their carrier customers to factor Surge receivables post-confirmation.

## Article VI

## Treatment of Administrative, Professional Fee and Priority Claims

Unless otherwise agreed by the Holder of an Administrative, Professional Fee or Priority Claim, such Claims shall be paid as follows:

**6.1    Administrative Claims.** Subject to the provisions of §§ 328, 330(a) and 331 of the Bankruptcy Code, and except as provided below, Debtor shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (iii) at such later time as may be agreed upon by such Holder and Debtor; or (iv) at such time and upon such terms as are set forth in a Final Order. Any party asserting an Administrative Claim must File such Claim on or before the Administrative Claim Bar Date. Triumph's rights in respect to payment of any fees and costs, including legal expenses, shall be governed by the Final DIP Financing Order, except as provided in paragraph 7.1 below.

**6.2    Professional Fee Claims.** Except as set forth below, Professionals or other Persons asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on Debtor, and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (the "Professional Fee Bar Date"). Professional Fee Claims shall be paid (i) on the date such Professional Fee Claim is Allowed or as soon as practicable thereafter; (ii) at such later time as may be agreed upon by such Holder and Debtor; or (iii) at such time and upon such terms as are set forth in a Final Order. The following compromises have been made with respect to the Professional Fees:

[825440/3]                                                    -11-

     (i)      Thames | Markey has agreed to defer all unpaid fees and costs awarded in excess of $200,000 (approximately $56,763 as of May 31, 2024), to be paid as funds become available post-confirmation;

     (ii)     Hirschler Law has agreed to defer all unpaid fees and costs awarded in excess of $100,000 (approximately $29,273 as of May 31, 2024), to be paid as funds become available post-confirmation; and

     (iii)    Dundon Advisers has agreed to accept $200,000 in satisfaction of its Administrative Fee Claim.

Counsel for the Unsecured Creditors' Committee shall be paid from the Exit Loan Facility.

Triumph's rights in respect to the payment of any fees and costs, including legal expenses incurred by Triumph, is governed by the Final DIP Financing Order, except to the extent modified by Section 7.1 below (which includes a waiver of approximately $130,000 in fees currently owed).

**6.3**    **Ordinary Course Liabilities.**  Administrative Claims based on liabilities incurred by Debtor in the ordinary course of their business, including Administrative Claims of governmental units for taxes, will, to the extent not paid during the pendency of the Chapter 11 Case, be paid by Debtor in the ordinary course, and not from the Exit Loan Facility, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the Holders of such Administrative Claims. Holders of Administrative Claims based on liabilities incurred by Debtor in the ordinary course of their business, including Administrative Claims of governmental units for taxes, will not be required to file or serve any request for payment of such Administrative Claims.

**6.4**    **Payment of Statutory Fees.**  All fees payable pursuant to Article 1930 of Title 28 of the United States Code assessed against Debtor's estate shall be paid in full by Debtor as they become due and owing.

**6.5**    **Priority Tax Claims.**  Unless otherwise agreed by Debtor and the Priority Tax Claim Holder, Priority Tax Claims shall be paid in full on or before the Initial Distribution Date. Priority Claims subject to dispute or objection shall receive no distribution until such objection or dispute is resolved by Final Order.

## Article VII

## Treatment of Impaired Classes

**7.1    Class 1—Triumph Financial Services.**

(a)    Classification:  Class 1 consists of Triumph's Allowed Secured Claim.

(b)    Impairment and Voting:  Class 1 is impaired by this Plan and is entitled to vote to accept or reject this Plan.

(c)    Treatment: Triumph's Allowed Secured Claim shall be added to the principal balance of the Exit Loan Facility and paid over seven years with no interest.  Triumph shall retain its existing liens until paid in full.

(d)    Post-Confirmation Terms: Triumph's rights and the Debtor's and Reorganized Debtor's duties under the Post-Petition Agreements shall include each of the following:

Prior to the filing of the Petition, the Debtor and Triumph, entered into a Factoring and Security Agreement as amended and supplemented by a Post-Petition Chapter 11 Bankruptcy Rider to Factoring Agreement.

Pursuant to and as authorized by the DIP Financing Order, Triumph was granted, among other things, a duly perfected first priority ownership interest in all Accounts that Triumph purchased from the Debtor post-petition, and a duly perfected first priority security interest in all assets of the Debtor acquired after the Petition Date, including but not limited to, all Accounts, including non-Purchased Accounts, but excluding Avoidance Actions, which security interest secures any now existing and hereafter arising Post-Petition Obligations (as defined in the DIP Financing Order) owing by the Debtor to Triumph in accordance with the Post-Petition Agreements (as defined in the DIP Financing Order, the "Post-Petition Agreements" consist of the parties' Factoring Agreement and a Post-Petition Chapter 11 Bankruptcy Rider to Purchase Agreement).

Pursuant to the Bankruptcy Rider, the following constitutes an Event of Default under the Post-Petition Agreements, if, "all post-petition Obligations due the Triumph are not repaid in full, without setoff, recoupment or deduction, by no later than the earlier of conversion or dismissal of the chapter 11 case, or, the effective date of any confirmed Plan, unless the Triumph agrees to and consents, in writing, to other treatment under a Plan." The Debtor has notified Triumph that the Debtor will be financially unable to repay all obligations owing to Triumph, in full, upon confirmation of the Plan, and in order to induce Triumph to consent to the

[825440/4]                                                    -13-

Plan and Triumph's willingness to agree to enter into the Exit Loan Facility in order to provide a distribution to the Debtor's unsecured creditors, the Debtor has agreed to preserve for the benefit of Triumph, and to grant to Triumph, each of the following rights post-confirmation:

(i) All existing and hereafter arising rights and interests granted to Triumph, and all monetary obligations and non-monetary obligations owed and hereafter owing to Triumph by the Debtor and the Reorganized Debtor, under and in respect to the Post-Petition Agreements and the DIP Financing Order: (a) shall be and are hereby assumed, ratified and acknowledged, and approved without any modification or further Court approval, and (b) shall at all times be fully preserved, and shall remain in full force and effect post-confirmation and fully binding on the Debtor and the Reorganized Debtor and all parties-in-interest of the Debtor and the Reorganized Debtor.

(ii) Triumph shall waive all attorney fees and costs incurred by it for the period February 1, 2024, to the Effective Date.

(iii) Upon entry of a Confirmation Order, the Reorganized Debtor and Triumph will continue to operate, post-confirmation, pursuant to the Post-Petition Agreements, as modified from time to time.

(iv) The DIP Financing Order shall remain in full force and effect, post-confirmation, however, notwithstanding, Triumph shall not be required to comply with certain provisions specific to the post-petition bankruptcy, including, sections 13 and 15 (related to any requirement that Triumph seek stay relief prior to exercising its rights after an Event of Default under the Post-Petition Agreements and the cure period) and 25 (Triumph's rights to reimbursement of any attorney's fees and costs incurred by Triumph for any post-confirmation defaults shall be governed post-confirmation solely by the terms of the Factoring Agreement).

(v) After confirmation of the Plan, the following interests granted to Triumph shall be fully preserved post-confirmation to secure any now existing and hereafter arising monetary obligations and non-monetary obligations owing to Triumph by the Debtor and/or the Reorganized Debtor arising under the Post-Petition Agreements, the Exit Loan Facility and any other agreements between Triumph and the Debtor: (a) the first priority ownership interest in all Purchased Accounts (as defined by the Post-Petition Agreements) and (b) first priority security interest, Liens and interests recognized or granted to Triumph in any collateral (as defined in the Post-Petition

[825440/3]

Agreements and/or the DIP Financing Order), including, but not limited to, the Exit Facility Collateral, but excluding Avoidance Actions, and (c) all rights granted to Triumph in respect to any supporting obligations (as such term is defined in the Uniform Commercial Code), including any guarantor of obligations owing to Triumph by Surge, including, the guaranty signed by Omar Singh in favor of Triumph ("Guarantor").

(vi)    In the event the Debtor, the Reorganized Debtor, and/or any Guarantor defaults under the Post-Petition Agreements, the Exit Loan Facility and/or the Plan, Triumph shall be entitled to exercise and enforce all rights and remedies, under the Post-Petition Agreements, the Exit Loan Facility, and the Plan under applicable state law, free of any injunction under 11 U.S.C. § 524(a), or otherwise.

(vii)   The Bankruptcy Court will retain non-exclusive, concurrent jurisdiction together with any state or federal court having subject matter and in personam jurisdiction over the subject matter of the Plan, to enforce to the terms of the Plan and the Post-Petition Agreements, and the Exit Loan Facility, and the Debtor, the Reorganized Debtor and Guarantor and each waive any right to contest the court's subject matter jurisdiction, or personal jurisdiction over the parties.

(viii)  Notwithstanding anything to the contrary, in the event of an express conflict between the terms of the DIP Financing Order on the one hand, and the Plan, the Confirmation Order, or any authorized amendment or modification to the Plan, on the other hand, the DIP Financing Order will control.

(ix)    After the Confirmation Date or Effective Date, whichever is earliest, the Debtor and/or Reorganized Debtor, on the one hand, and Triumph, on the other hand, shall be entitled by written agreement to modify the terms of the Post-Petition Agreements and/or the Exit Loan Facility (but not so as to decrease the $2.15 million Exit Loan Facility) without having to obtain authorization from the Bankruptcy Court or any order of Court authorizing a modification of the Plan. Nothing contained in this Plan shall effect Triumph's rights to exercise any of Triumph's rights under the Post-Petition Agreements, or another agreement entered into between Triumph and Surge, including, but not limited to, the Payment Processor Agreement between the Debtor and TBK Bank, SSB d/b/a TriumphPay dated January 22, 2018, including the Quick Pay program Triumph elected to make available to, or for the benefit of,

[825440/3]

-15-

the Debtor during the pendency of the Debtor's chapter 11 Bankruptcy Case.

    (x)    No order may be entered in the Bankruptcy Case that modifies, enjoins, impairs, interferes with, or adversely impacts any of Triumph's rights and/or the Debtor's (and the Reorganized Debtor's) monetary and non-monetary obligations to Triumph under and with respect to the Post-Petition Agreements, the Exit Loan Facility and the DIP Financing Order except expressly as provided herein.

    (xi)    The following provisions contained in this Plan to the extent inconsistent with this section, are inapplicable to Triumph to the extent such provision benefits Triumph, including Sections 6.1 (Administrative Claims) and 6.2 (Professional Fee Claims), Article XIII (Exculpation), and Article XII (Plan and Third-Party Injunctions/Releases), 10.14 (Setoff and Recoupment) and Section 14.2 (Preservation of Causes of Action).

In addition to the foregoing, Debtor's principal, Omar Singh, shall pay Triumph $600,000 in settlement of potential claims against him arising under his personal guaranty of the Prepetition Factoring Agreement. The claims are attributable to Triumph's waivers of its unsecured claims against the Estate and its right to pursue further recourse against the carriers that provided prepetition transportation services to Surge and its customers. The $600,000 obligation shall be guaranteed by the Debtor and secured by the same collateral securing the Exit Loan Facility. The $600,000 obligation shall not accrue interest and shall be payable in thirty-six (36) monthly installments of $16,666.67 each commencing thirty (30) days following the seventh anniversary of the initial payment under the Exit Loan Facility; provided, however, that the $600,000 obligation will be reduced by $30,000 per year, prorated, for early payment.

Upon Confirmation of the Plan, the Reorganized Debtor and Triumph shall be entitled to continue to conduct business pursuant to the terms of the Post-Petition Agreements; specifically, the Reorganized Debtor shall continue to offer to sell Accounts to Triumph, which upon purchase by Triumph shall constitute Purchased Accounts, in exchange for purchase price advances from Triumph which shall be sold in accordance with and subject to the terms of the Post-Petition Agreements.

**7.2**    <u>**Class 2 - Factoring Claims.**</u>

    (a)    Class 2 consists of all Factors, who, in exchange for (i) a 30% discount on their Claims, and (ii) an enforceable commitment on their part to permit their carrier customers to factor Surge receivables on a continuing basis post-confirmation, will receive a release of all Avoidance Actions and Causes of Action which Surge may assert

against them arising out of payments made to such Factors in the 90 days preceding the Petition Date.

(b)    <u>Impairment and Violation</u>.  Class 2 is impaired by this Plan and eligible to vote.

(c)    <u>Treatment</u>.  All Factors wishing to elect treatment under Class 2 shall do so by affirmatively electing such treatment on the Ballot provided to it in connection with this Plan.  To obtain the releases described above, such Factors shall be required to execute and deliver to Surge a Settlement Agreement and Release in substantially the form attached hereto as **Exhibit A**.  The Factor shall thereafter be entitled to share in the distribution to Class 3 General Unsecured Creditors on a pro-rata basis based on the agreed 30% reduction in their Claims. RTS Financial Service, Inc. and OTR Solutions have previously agreed to Class 2 treatment in settlement of Avoidance Actions, and therefore are already deemed to be in Class 2 without making an election.

## 7.3    <u>Class 3 - General Unsecured Claims</u>.

(a)    <u>Classification</u>:  Class 3 consists of General Unsecured Claims.

(b)    <u>Impairment and Voting</u>:  Class 3 is impaired by the Plan and is entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>:  Allowed Unsecured Claims, excluding Triumph's Allowed Unsecured Claim, will share pro rata the balance of the Exit Loan Facility proceeds after payment of the Settlement Payment, all Administrative Claims (excluding the deferred portions thereof described in Section 6.2 of the Plan) and Priority Claims as provided herein, with payment to be made on the Initial Distribution Date.  The Exit Loan Facility proceeds shall be free and clear of Triumph's security interests and, after payment of the Settlement Payment, Administrative and Priority Claims, shall be held in a segregated account pending disbursement, at which time the proceeds will be transferred to TriumphPay or such other agent as Debtor may determine for disbursement.  Debtor may seek an extension of the Initial Distribution Date if necessary to accommodate resolution of claims objections which may have a material impact on the distributions to other creditors or as a matter of administrative convenience, which extension is subject to entry of an order of the Court after notice to the "Short List" of creditors and parties in interest and a hearing.  In addition, and provided the Reorganized Debtor is not in default of its various installment payment obligations to Triumph, Debtor shall make a supplemental distribution to Class 3 equal to the difference between $1,000,000 and the amount distributed to Class 3 on the Initial Distribution Date, payable as an unsecured obligation from (i) any net operating income of the Reorganized Debtor, and (ii) the proceeds of Avoidance Actions collected through June 30, 2026, if any, less all attorney fees and costs incurred in the pursuit of such

[825440/3]

Avoidance Actions and deferred by Debtor's counsel as of the Confirmation Date. The supplemental distribution will be made within sixty (60) days of June 30, 2026, and the Reorganized Debtor shall file a report with the Court reflecting same.  No loans, cash distributions or dividends shall be paid to any insider of the Reorganized Debtor until the supplemental distribution is made (except to the extent necessary to cover any tax liability imputed to such insider as a result of his or her ownership of the Reorganized Debtor).

There shall be no distribution on account of any Disputed Claim until such objection or dispute is resolved by Final Order.  In accordance with Section 10.1 of the Plan, Debtor shall, however, reserve funds to make the proportionate distribution to such creditors until such time as all claim objections have been finally determined.  All funds reserved on account of Disallowed Claims shall be distributed pro-rata to the holders of Allowed Unsecured Claims concurrently with the supplemental distribution of the net proceeds of Avoidance Actions in the manner and time periods described above.  Debtor may, in its sole discretion, delay making the initial distribution if it expects resolution of a Disputed Claim within a reasonable time.

Pursuant to § 502(d) of the Bankruptcy Code, no payments shall be made to any entity from which property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any such property from which such entity or transferee is liable under §§ 522(i), 542, 543, 550 or 553 of the Bankruptcy Code.  The Claim of any recipient of a payment avoidable under §§ 542, 543, 550 or 553 of the Bankruptcy Code who fails to pay or turnover the amount of the payment to Debtor within sixty (60) days of a judgment or order avoiding the transfer or requiring such turnover shall be extinguished and forever barred.

**7.4**    **Class 4 - Equity Interests**

    (a)    <u>Classification</u>:  Class 4 consists of all Interests in the Debtor.

    (b)    <u>Impairment and Voting</u>:  Class 4 is unimpaired.

    (c)    <u>Treatment</u>:  In consideration of Mr. Singh's pledge of Exit Facility Collateral to secure the Exit Loan Facility, all of Mr. Singh's equity interests in the Debtor shall be retained, and all rights and privileges attendant the equity interests shall remain unaltered.  This Class is unimpaired.

**Article VIII**

**Treatment of Executory Contracts and Unexpired Leases**

Debtor has or will move to assume the following executory contracts and unexpired leases prior to the Confirmation date:

| Lessor/Counterparty | Description |
|---|---|
| Triumph | Factoring Agreement |
| Various | All Shipper / Broker contracts |
| Omar Singh | License for use of confidential freight bidding software |
| Tom McLeod Software Company | Software License and Professional Services Agreement |
| HH Center, LLC | Lease of Office Space located at 7077 Bonneville Road Jacksonville, Florida |

Though Debtor has not assumed the Broker Carrier Agreement which it maintains with its carriers, all carriers who provide post-confirmation transportation services for the Debtor pursuant to said pre-petition contracts shall be bound and obligated thereby for all post-confirmation shipments accepted by them. After the Confirmation Date, the Broker Carrier Agreements may be modified by the Debtor in its discretion, with Triumph's knowledge and consent.

Any Executory Contract or Unexpired Lease which is not expressly assumed shall be deemed rejected as of the entry of the Confirmation Order. Any party to an Executory Contract or Unexpired Lease that claims damages from the rejection of such lease or contract must file a Claim for such damages within thirty (30) days of the rejection of such contract or lease or be forever barred from asserting such Claim.

The Debtor does not believe that the Insurance Policies issued to, or insurance agreements entered into prior to the Petition Date, constitute Executory Contracts. To the extent that such Insurance Policies or agreements are considered to be Executory Contracts, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to § 365(a) of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by

[825440/3]

the parties thereto prior to the Effective Date, no payments are required to cure any defaults of Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

The Plan itself shall not expand the scope of, or alter in any other way, the rights and obligations of Debtor's insurers under their policies, and Debtor's insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any party.

Notwithstanding the preceding language, the terms of this Plan shall have no adverse impact or otherwise adversely affect any of Triumph's rights against the Debtor or the Reorganized Debtor under or in respect to the Factoring Agreement, which rights and benefits under the Factoring Agreement shall continue regardless of any failure by the Court to enter any Orders assuming the Factoring Agreement as an executory contract. In the event any license granted to Debtor by a government unit, and in effect immediately prior to the Effective Date, is considered to be an executory contract, and is not otherwise terminated or rejected by Debtor, such license shall be deemed to have been assumed pursuant to § 365 of the Bankruptcy Code upon confirmation of the Plan.

Nothing contained herein shall constitute an admission by Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## Article IX

## Effect of Confirmation

**9.1    Means of Implementation.** The Plan will be implemented and funded from the Exit Loan Facility, from continuing operations and from the proceeds of Avoidance Actions.

**9.2    Vesting of Assets.** Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all Assets, wherever situated, and all Causes of Action shall vest in the reorganized Debtors free and clear of all liens and encumbrances except those held by Triumph.

**9.3    Dissolution of the Committee.** The Committee shall be dissolved upon confirmation of the Plan.

[825440/3]

**9.4    Post-Confirmation Management.** Debtor shall continue to be managed post-petition by Omar Singh, its President.

**9.5    Court Authorization.** The entry of the Confirmation Order shall constitute authorization for Debtor to execute such further documents or to cause to be taken all actions necessary or appropriate to consummate and implement the provisions herein prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of Debtor.

## Article X

### Provisions Governing Distributions

**10.1    Disputed Claim Reserve.**

a.    Establishment of Disputed Claim Reserve. Debtor shall establish a separate Disputed Claim Reserve for Disputed Claims, to the extent any Disputed Claims exist. Debtor shall reserve distributions sufficient to provide Holders of Disputed Claims the treatment such Holders would be entitled to receive under this Plan if all such Disputed Claims were to become Allowed Claims.

b.    Maintenance of Disputed Claim Reserve. Debtor shall hold distributions in the Disputed Claim Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. Debtor shall make such distributions (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order, and such distributions will be distributable in respect of such Disputed Claims as such distributions would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

**10.2    Supplemental Distributions.** To the extent a Claim is Allowed after the initial distribution date, Debtor shall make the distributions required to be made on account of such Claim under this Plan no later than ninety (90) days after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to this Article Nine.

**10.3    Record Date for Distributions.** Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by Debtor, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the

transfer may not have expired by the Distribution Record Date. Debtor shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, Debtor shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to Debtor as applicable, as of the Distribution Record Date.

**10.4    Delivery of Distributions.**

       a.     <u>General Provisions</u>. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the Holders of Allowed Claims shall be made by Debtor. Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by Debtor. Distributions to Holders of Allowed Claims will be made at the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Holder. Payment on Claims factored by Carriers, or assigned to a collection agent, shall be made in accordance with any notice of assignment furnished to the Debtor. Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth herein. Neither Debtor nor its professionals shall incur any liability whatsoever on account of any erroneous distributions under this Plan except for gross negligence, willful misconduct or fraud.

       b.     <u>Undeliverable Distributions</u>. If any distribution is returned as undeliverable, Debtor may, in its discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made as Debtor deems appropriate, but no distribution to any Holder shall be made unless and until Debtor has determined the then-current address of the Holder, at which time the distribution to such Holder shall be made to the Holder (without interest). Amounts in respect of any undeliverable distributions made by Debtor shall be returned to, and held in trust by, Debtor until the distributions are claimed or are deemed to be unclaimed property under § 347(b) of the Bankruptcy Code. Debtor shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; *provided, however*, that their discretion may not be exercised in a manner inconsistent with any express requirements of this Plan.

       c.     <u>Unclaimed Property</u>. Except with respect to property not Distributed because it is being held in the Disputed Claim Reserve, distributions that are not claimed by the expiration of one (1) year from the Effective Date or the date of a supplemental distribution applicable to such distribution, shall be deemed to be unclaimed property under § 347(b) of the Bankruptcy Code and shall vest or

revest in Debtor, and the Claims with respect to which those distributions are made shall be automatically canceled. After the expiration of such one (1) year period, the Claim of any Entity to those distributions shall be discharged and forever barred. Nothing contained in this Plan shall require Debtor to attempt to locate any Holder of an Allowed Claim.

**10.5    Time Bar to Cash Payments by Check.** Checks issued by Debtor on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this section shall be made directly to Debtor by the Holder of the Allowed Claim to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Initial Distribution Date or the date a supplemental distribution was made, as applicable, on which such check was issued. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of Debtor as unclaimed property in accordance with § 347(b) of the Bankruptcy Code. All costs for reissuance shall be borne by the Claim Holder.

**10.6    Compliance with Tax Requirements.** In connection with making distributions under this Plan, to the extent applicable, Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. Each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Debtor may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's distribution shall be treated as an undeliverable distribution.

**10.7    No Payments of Fractional Dollars or De Minimis Amounts.** Notwithstanding any other provision of this Plan to the contrary, no payment of fractional dollars or amounts aggregating less than $50 shall be made pursuant to this Plan. Whenever any payment of a fraction of a dollar under this Plan would otherwise be required, the actual distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**10.8    Interest on Claims.** Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after that Disputed Claim becomes an

[825440/3]

Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

**10.9    No  Distribution  in  Excess  of  Allowed  Amount  of  Claim.** Notwithstanding anything to the contrary contained in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any distribution in excess of the Allowed amount of that Claim.

**10.10    Duplicate Claims.**  There shall be only one Claim allowed on account of a single freight transportation transaction evidenced by a load confirmation number established by the Debtor.  If a carrier's Claim is included in its factor's Claim, and Debtor has previously received a notice of assignment from the carrier to said factor, any distributions on account of the Claim shall be paid to the factor unless and until a release is provided by the factor.  Section 10.17 below addresses the distribution rights between carriers and their factors.  A number of previously factored Claims also appear to have been assigned to collection agents like Baxter Bailey & Associates, Inc. and Alexander Winton & Associates, Inc.  With respect to such assigned Claims, notices of assignment will be honored in order of their priority until released, with the earlier notice having priority over the latter.  Notwithstanding the foregoing, Debtor may, in its reasonable discretion as a matter of convenience, cost and expediency, pay a duplicate Claim if the amount of such duplicate Claim or the distribution to be made on account of such duplicate Claim is in Debtor's reasonable determination *de minimus* in amount without incurring liability to an assignee of such Claim.

**10.11    Settlement of Claims, Disputes and Litigation.**  After the Confirmation Date, Debtor is authorized to resolve or settle any Claim objection, adversary proceeding, contested matter, or pending litigation, in their sole discretion, without further notice and without the necessity of obtaining Bankruptcy Court approval.  Debtor shall not be required to pursue an objection to any Claim, including duplicative claims, where the cost of doing so outweighs the amount in controversy.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.

**10.12    Expungement or Adjustment to Claims Without Objection.**  Any Claim that has been paid, satisfied or superseded may be expunged on the Claims register, and any Claim that has been amended may be adjusted thereon, in both case without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**10.13    Claims Paid by Third Parties.**  Debtor shall reduce a Claim, and such Claim shall be disallowed without an objection to such Claim having to be filed and without further notice to, action, order, or approval of the Bankruptcy Court, to the extent the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the

distribution, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing annualized interest at the federal judgment rate on such amount owed for each Business Day after the two-week grace period specified above until such amount is repaid.

**10.14  Setoff and Recoupment.**  Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the distributions to be made pursuant to this Plan in respect thereof, any Claims or defenses of any nature whatsoever that Debtor, the Estate or Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver or release by Debtor or the Estate(s), of any Claim or right of setoff or recoupment that any of them may have against the Holder of any Claim. Nothing herein shall, however, impact or prohibit the exercise of Triumph's rights of setoff or recoupment under the Factoring Agreement.

**10.15  Special Provision Regarding Unimpaired Claims.**  Except as otherwise provided in this Plan, nothing shall affect Debtor's rights and defenses, both legal and equitable, with respect to any unimpaired Claim (including Claims that are Allowed pursuant to this Plan), including, without limitation, all rights with respect to the legal and equitable defenses to setoffs or recoupments against unimpaired Claims, and Debtor's failure to object to such Claims in the Chapter 11 Case shall be without prejudice to Debtor's right to contest or defend against such Claims in (i) any appropriate non-bankruptcy forum as if such Chapter 11 Case had not been commenced, or (ii) the Bankruptcy Court (such forum to be selected at Debtor's option).

**10.16  Prepayment.**  Debtor expressly reserves the right, in its sole discretion, to prepay, in full or in part, any obligation created pursuant to the Plan, and no interest shall accrue with respect to the prepaid portion of such obligation from and after the date of such prepayment. No fees or other charges shall be charged to Debtor as a result of any such prepayment.

**10.17  Special Provisions Regarding Factored Claims.**  The Debtor scheduled creditors with Claims based upon the information in its books and records, and determined to the best of its ability whether the Holder of each freight-related Claim was a freight carrier, or a factoring company because the carrier had factored or assigned its Claim. However, there has been a significant overlap of General Unsecured Claims, because both carriers and factors have filed duplicate Claims for the same obligation. Moreover, in some instances, the factor has taken recourse or charged back the pre-petition claim against the carrier, without informing the Debtor. Therefore, if a factor receives a distribution on an Allowed Claim that has been charged back against the carrier, then the factor shall forward such distribution to the carrier, and the Debtor is deemed to satisfy its obligation to both the factor and the carrier. If the Debtor unknowingly makes a distribution to a factor that is duplicative of a distribution to the carrier, then the factor shall return such distribution to the Debtor and the Debtor will deposit the returned distribution in the Disputed Claim Reserve and include it in a subsequent distribution following the resolution of all

[825440/3]

-25-

Avoidance Actions.  Both the carrier and the factor are bound to the discharge and injunctions under this Plan.

## Article XI

### Discharge, Release and Effect of Confirmation

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS  ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS) FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTOR AND ITS ASSETS, OR DEBTOR'S PRINCIPAL, OMAR SINGH, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED, OR TO BE EXCULPATED, PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST TRIUMPH, THE DEBTOR OR ITS PRINCIPAL, OMAR SINGH, ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE INVOLVING SURGE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, INCLUDING ANY CLAIMS ASSERTABLE AGAINST SURGE OR TRIUMPH IN CONNECTION WITH TRIUMPH'S COLLECTION OF ACCOUNT DEBTOR PAYMENTS BEFORE OR AFTER THE PETITION DATE (AS PROVIDED UNDER THE BAR ORDER / FINAL DIP ORDER).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS IN THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST DEBTOR SHALL BE SATISFIED AND RELEASED IN FULL.

THE PROSECUTION OR COLLECTION OF ANY CLAIMS AGAINST ANY GUARANTOR OF DEBTOR'S INDEBTEDNESS, INCLUDING LEASE

[825440/3]

OBLIGATIONS, ARE HEREBY ENJOINED AND STAYED UNTIL SUCH TIME AS DEBTOR HAS DEFAULTED IN ITS PAYMENT OBLIGATIONS UNDER THIS PLAN, BUT ONLY WITH RESPECT TO THE OBLIGATION THEN IN DEFAULT. ANY STATUTE OF LIMITATIONS FOR ENFORCEMENT OF ANY CLAIMS AGAINST THE GUARANTORS OF DEBTOR'S INDEBTEDNESS SHALL BE TOLLED DURING THE PENDENCY OF THIS INJUNCTION. ALL GUARANTEES OF DEBTOR'S INDEBTEDNESS SHALL BE DEEMED SATISFIED AND EXTINGUISHED UPON COMPLETION OF DEBTOR'S OBLIGATIONS TO THE PARTICULAR CREDITOR OR CLASS OF CREDITORS UNDER THIS PLAN. THIS INJUNCTION SHALL NOT APPLY TO ANY CLAIM BY TRIUMPH RELATIVE TO A DEFAULT UNDER THE EXIT FACILITY LOAN.

DURING THIS BANKRUPTCY CASE, ON A NUMBER OF OCCASIONS CARRIERS PICKED UP AND REFUSED TO DELIVER LOADS (*i.e.*, held the load "hostage") UNLESS AND UNTIL THE DEBTOR PAID THE CARRIER'S PRE-PETITION CLAIM. THIS CONDUCT VIOLATED THE AUTOMATIC STAY; AND THEREFORE, THE DEBTOR HAD TO FILE A MOTION FOR SANCTIONS AND THE COURT ISSUED SANCTIONS AGAINST THE HOSTAGE TAKING CARRIER. IF THIS SHOULD CONTINUE TO OCCUR AFTER THE PLAN IS CONFIRMED, THEN IT WOULD CONSTITUTE A VIOLATION OF THE DISCHARGE INJUNCTION AND THE PLAN. THEREFORE, THE DEBTOR WILL REQUEST THAT THE CONFIRMATION ORDER SPECIFICALLY RETAIN THE COURT'S JURISDICTION TO ENFORCE THE RELEASE AND DISCHARGE PROVISIONS OF THIS PLAN (WITHOUT ANY REQUIREMENT TO REOPEN THE BANKRUPTCY CASE); AND IF SUCH VIOLATION IS FOUND TO OCCUR POST CONFIRMATION, THE COURT WILL AWARD SANCTIONS IN THE MINIMUM AMOUNT OF FIFTY THOUSAND DOLLARS ($50,000).

UNLESS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS IN EFFECT IN THE CHAPTER 11 CASE PURSUANT TO §§ 105 OR 362 OF THE BANKRUPTCY CODE OR ANY ORDER OF THE BANKRUPTCY COURT, AND EXTANT ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER), SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. ALL INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER SHALL REMAIN IN FULL FORCE AND EFFECT IN ACCORDANCE WITH THEIR TERMS.

NO PERSON OR ENTITY MAY COMMENCE OR PURSUE A CLAIM OR CAUSE OF ACTION OF ANY KIND AGAINST TRIUMPH, THE DEBTOR, THE POST-EFFECTIVE DATE DEBTOR, THE EXCULPATED PARTIES (IDENTIFIED BELOW), OR THE RELEASED PARTIES, AS APPLICABLE, THAT RELATES TO OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF A CLAIM OR CAUSE OF ACTION SUBJECT TO ARTICLE XI, HEREOF, WITHOUT THE BANKRUPTCY

[825440/3]

COURT (I) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM OR CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM OF ANY KIND, AND (II) SPECIFICALLY AUTHORIZING SUCH PERSON OR ENTITY TO BRING SUCH CLAIM OR CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, POST-EFFECTIVE DATE DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY.

THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CLAIM OR CAUSE OF ACTION IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE AND AS PROVIDED FOR IN ARTICLE XI, SHALL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSE OF ACTION.

NOTHING IN THIS ARTICLE XI SHALL BE DEEMED TO AFFECT OR IMPAIR ANY RIGHTS WHICH TRIUMPH MAY HAVE ARISING FROM OR RELATED TO THE FACTORING AGREEMENT OR ANY OTHER AGREEMENTS BETWEEN OR AMONG TRIUMPH, THE DEBTOR OR ANY GUARANTOR, INCLUDING OMAR SINGH, OR ANY RIGHTS HELD BY TRIUMPH UNDER THE EXIT LOAN FACILITY.

## Article XII

## Exculpation

Notwithstanding anything contained in this Plan to the contrary, neither Debtor nor its professionals shall incur any liability to any person or Entity for any and all claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, approving, disseminating, implementing, administering, confirming or consummating this Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Case; provided, however, that the foregoing provision shall have no effect on the liability of any person or entity that results from any act or omission that is determined by a Final Order to be solely due to such person or entity's own gross negligence or willful misconduct.

## Article XIII

## Plan and Third-Party Injunctions/Releases

On October 13, 2023, after the Court conducted a full day evidentiary hearing on the Debtor's Motion seeking an order establishing certain procedures and protections to aid in the collection of prepetition accounts receivable owed to Surge, including the entry of a bar order supplementing the automatic stay and expressly prohibiting carriers from pursuing collections from Surge's shipping customers for freight transportation charges owed by Surge (Docket No. 110) following which the Court entered the Payment Procedures Order. Pursuant to the Payment Procedures Order, the relief granted included a permanent injunction as to all parties receiving notice of the Motion or the Payment Procedures Order, and the Court granted a temporary injunction remaining in effect, without further notice or hearing, and without security or bond being posted, as to the Objecting Parties until the conclusion of the adversary proceedings filed by the Objecting Parties and any appeals therefrom, or until further order of this Court. The Payment Procedures Order was not timely appealed and constitutes a final non-appealable order. The Court has determined that the injunctive relief established by the Payment Procedures Order shall become a permanent injunction as to all parties, including, but not limited to, all Objecting Parties immediately upon confirmation of the Plan. As a result, the Payment Procedures Order shall be extended post-confirmation, as follows:

ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES, LIENS, OR ANY INTERESTS OF ANY KIND OR NATURE AGAINST THE DEBTOR OR ANY PROPERTY OF THE DEBTOR ARISING OUT OF OR RELATING TO SURFACE FREIGHT TRANSPORTATION SERVICES PROVIDED TO THE DEBTOR (COLLECTIVELY, THE "CARRIERS"), REGARDLESS OF THE FILING, LACK OF FILING, LACK OF APPEARANCES IN THIS CASE, ALLOWANCE OR DISALLOWANCE OF ANY SUCH CLAIM OR INTEREST, AND ANY SUCCESSORS, ASSIGNS OR REPRESENTATIVES OF ANY SUCH PERSON OR ENTITY, INCLUDING FACTORS, ARE HEREBY PRECLUDED, BARRED AND ENJOINED FROM THE COMMENCEMENT OR CONTINUATION OF ANY ACTION OR PROCEEDING (WHETHER FORMAL OR INFORMAL, AND INCLUDING, WITHOUT LIMITATION, MAKING DEMAND) AGAINST ANY PERSON OR ENTITY TO WHOM THE DEBTOR PROVIDED GOODS OR SERVICES AT ANY TIME (A "SHIPPER" OR "CONSIGNEE") SEEKING OR DEMANDING PAYMENT FROM SUCH SHIPPER OR CONSIGNEE OF ANY AMOUNT OWED BY THE DEBTOR (WHETHER SEVERALLY, JOINTLY OR OTHERWISE) TO SUCH PERSON OR ENTITY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL CARRIERS WHO PROVIDED SERVICES TO THE DEBTOR PRIOR TO JULY 24, 2023, FOR WHICH THEY HAVE NOT BEEN PAID ARE HEREBY PRECLUDED, BARRED AND ENJOINED FROM SEEKING, DEMANDING OR TAKING ANY OTHER ACTION, THE PURPOSE OF WHICH IS

TO OBTAIN PAYMENT OF AMOUNTS OWED BY THE DEBTOR (WHETHER SEVERALLY, JOINTLY OR OTHERWISE) FROM ANY SHIPPER OR CONSIGNEE OF SURGE.    THIS INJUNCTION IS PERMANENT AS TO ALL PARTIES RECEIVING NOTICE OF THE CONFIRMATION ORDER.

ALL SHIPPERS AND CONSIGNEES OF SURGE ARE HEREBY PRECLUDED, BARRED AND PERMANENTLY ENJOINED FROM (A) MAKING PAYMENT OF AMOUNTS OWED BY SUCH SHIPPER OR CONSIGNEE ON ACCOUNT OF GOODS OR SERVICES PROVIDED BY THE DEBTOR TO ANY CARRIER OR ANY OTHER PERSON OR ENTITY REPRESENTING SUCH CARRIER EXCEPT THE DEBTOR OR TRIUMPH, AS ASSIGNEE OF THE DEBTOR'S RIGHT TO RECEIVE PAYMENT AFTER TRIUMPH HAS ISSUED A NOTICE OF ASSIGNMENT TO THE SHIPPER OR CONSIGNEE, AND (B) SETTING OFF, RECOUPING AGAINST OR DEDUCTING FROM ANY AMOUNT OWED TO THE DEBTOR ANY AMOUNT OWED OR ALLEGEDLY OWED BY THE DEBTOR TO ANY CARRIER.    WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, NO SHIPPER OR CONSIGNEE SHALL BE ENTITLED TO ASSERT THAT (I) THE FAILURE OF THE DEBTOR TO PAY ANY CARRIER OR TRANSPORTATION PROVIDER OR OTHER SHIPPER RELIEVES OR DISCHARGES SUCH SHIPPER OR CONSIGNEE, IN WHOLE OR IN PART, FROM ITS OBLIGATION TO MAKE PAYMENT TO SUCH DEBTOR OR (II) ADJUDICATION OF ANY CLAIM OF THE DEBTOR AGAINST SUCH SHIPPERS OR CONSIGNEES SEEKING TO RECOVER AMOUNTS OWED FOR GOODS OR SERVICES PROVIDED REQUIRES JOINDER OF ANY CARRIER AS AN INDISPENSABLE PARTY.

EACH SHIPPER, CONSIGNEE, PERSON, ENTITY, OR CUSTOMER OF THE DEBTOR IS HEREBY DIRECTED TO PAY ANY AMOUNTS OWED THE DEBTOR TO THE DEBTOR OR TRIUMPH, AS ASSIGNEE OF THE DEBTOR'S RIGHTS TO RECEIVE PAYMENT AFTER TRIUMPH HAS ISSUED A NOTICE OF ASSIGNMENT TO THE SHIPPER OR CONSIGNEE, WITHOUT SETOFF RECOUPMENT OR ANY DEFENSE DUE TO ANY ISSUES RELATED TO UNPAID FREIGHT CHARGES OWED BY SURGE TO ITS CARRIERS. UPON PAYMENT TO SURGE OR TRIUMPH, AS APPLICABLE, THE RESPECTIVE SHIPPER, CONSIGNEE, PERSON, ENTITY OR CUSTOMER SHALL BE IRREVOCABLY DISCHARGED OF ANY LIABILITY TO THE CARRIER, THE CARRIER'S FACTOR, OR ANY OTHER PARTY LEGALLY ENTITLED TO ASSERT RIGHTS ON BEHALF OF THE CARRIER WITH RESPECT TO THE INVOICE SUCH PAYMENT IS INTENDED TO SATISFY.

THE INJUNCTIONS AND PROHIBITIONS CONTAINED HEREIN ARE IN ADDITION TO, AND DO NOT REDUCE, MODIFY OR ELIMINATE, THE PROTECTIONS AND PROHIBITIONS CONTAINED IN §§ 362 AND 553 OF THE BANKRUPTCY CODE.    THE DEBTOR SHALL NOT BE DEEMED TO HAVE WAIVED ITS RIGHT TO SEEK CONTEMPT SANCTIONS OR DAMAGES FROM

[825440/3]

ANY ON ACCOUNT OF VIOLATION OF THE AUTOMATIC STAY PROVIDED IN § 362 OF THE BANKRUPTCY CODE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES DESCRIBED IN THIS ARTICLE XIII, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS ARTICLE XIII IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF SUCH CAUSES OF ACTION; (III) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (VI) A SOUND EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT; AND (VII) A BAR TO ANY OF THE RELEASING PARTIES OF THE DEBTOR ASSERTING ANY CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES.

## Article XIV

## Maintenance of Causes of Action

**14.1    Vesting of Causes of Action.** Except as otherwise provided in this Plan or Confirmation Order, in accordance with § 1123(b)(3) of the Bankruptcy Code, any Causes of Action that Debtor may hold against any Entity shall revest upon the Effective Date in Debtor. Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, Debtor shall have the exclusive right, but not the obligation, to institute, prosecute, abandon, settle or compromise any Causes of Action, in accordance with the terms of this Plan and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

**14.2    Preservation of All Causes of Action Not Expressly Settled or Released.** Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order), Debtor expressly reserves such Cause of Action for later adjudication (including, without limitation, Causes of Action not specifically identified or described in this Plan or elsewhere or of which Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtor at this time or facts or circumstances which may change or be different from those Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action

[825440/4]

upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in this Plan or any other Final Order (including the Confirmation Order). In addition, Debtor expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

### Article XV

### Effective Date of Plan

The Effective Date of the Plan shall be the first day of the next month following the date upon which the Confirmation Order is no longer subject to rehearing, appeal or certiorari proceedings, or such other earlier date as Debtor shall designate in a written notice filed with the Bankruptcy Court.

### Article XVI

### Conditions Precedent to Occurrence of Effective Date

The Effective Date shall not occur unless and until the following conditions have been satisfied or waived by Debtor or, Triumph where applicable, Triumph:

      a.     The Plan shall have been confirmed;

      b.     The Confirmation Order shall be in form and substance acceptable to the Debtor and Triumph;

      c.     The Declaratory Relief Actions shall have been dismissed with prejudice; and

      d.     Triumph shall have funded the Exit Loan Facility in an amount not less than $2,150,000.

### Article XVII

### Miscellaneous

    **17.1**   **Objection Deadline.** As soon as practicable, but in no event later than ninety (90) calendar days after the Confirmation Date, unless otherwise ordered by the

[825440/3]

-32-

Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders thereof and the United States Trustee for the Middle District of Florida.

**17.2    Further Action:**  Debtor is authorized and directed to execute and deliver all documents and take and cause to be taken all action necessary and appropriate to execute and implement the provisions of this Plan.

**17.3    No Attorneys' Fees.**  Unless otherwise agreed by Debtor, no pre- or post-petition attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court prior to the Confirmation Date.

**17.4    Further Assurance.**  If at anytime Debtor shall consider or be advised that any further releases or assurances are reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated herein, the Claim or Interest Holder whose action is required shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions of this Plan.

**17.5    Employment of Professionals.** After confirmation, Debtor is authorized to employ such professionals as they deem appropriate and to compensate them without the further approval of the Court.

**17.6    Enforcement.**  In the event it becomes necessary to initiate litigation to enforce the terms of this Plan, the non-prevailing party shall pay the court costs and attorney's fees of the prevailing party in such enforcement action including, without limitation, all such fees and expenses incurred in negotiations, at trial, on appeal, and in bankruptcy court.

**17.7    Section 1146 Exemption:** Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the revesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**17.8    Withdrawal of Plan.**  At the option of Debtor, this Plan may be withdrawn at any time prior to the entry of the Confirmation Order. If such option is timely and properly exercised, the withdrawn Plan would be null and void and of no legal effect and the Case shall continue and be administered in accordance with the Bankruptcy Code.

**17.9    Discrepancies.**  In the event of any discrepancy between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.

**17.10  Default by Debtor.**  All payments required hereunder shall have an automatic grace period from payment of fourteen (14) days.  A default by Debtor occurs only when a breach of the terms of this Plan is not cured within thirty (30) days of the receipt by Debtor of notice of such breach delivered after the expiration of the grace period. The notice must be written and from the party affected by the breach.  A breach that is not timely cured shall be a default under the Plan.  Unless Debtor has defaulted under the Plan, no Person may proceed with litigation against Debtor, Debtor's property, its shareholders or guarantors.

**17.11  Continued Operations.**  Debtor plans to continue to operate and manage its business after the Confirmation Date.  Upon confirmation, all assets of Debtor's bankruptcy estate, including Causes of Action, shall vest in the Debtor subject only to any valid lien, security interest, mortgage or other interest in property as provided for in this Plan.

**17.12  Non-Material Modifications.**  Debtor may, with the approval of the Bankruptcy Court and without notice to holders of Claims or Equity Interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any interest holder who has not accepted in writing the modification.

**17.13  Notices.**  Any notice hereunder shall be in writing, and if by telegram, telex or facsimile, shall be deemed to have been given when sent, and if mailed shall be deemed to have been given three days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

|  |  |
|---|---|
| To the Debtor: | Mr. Omar Singh<br>Surge Transportation, Inc.<br>7077 Bonneval Road<br>Jacksonville, Florida 32216 |
| With a copy to: | Richard R. Thames, Esq.<br>Thames \| Markey<br>50 North Laura Street, Suite 1600<br>Jacksonville, Florida 32202 |
|  | Stephen Leach, Esq.<br>David I. Swan, Esq.<br>HIRSCHLER FLEISCHER<br>1676 International Drive, Suite 1350<br>Tysons, Virginia 22102-4940 |

[825440/3]

**17.14  Successors and Assigns.** The duties, rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Persons.

## Article XVIII

## Retention Of Jurisdiction

**18.1  Retention of Jurisdiction.** Pursuant to §§ 1334 and 157 of Title 28 of the United States Bankruptcy Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to this Chapter 11 case and the Plan, for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)  To hear and determine any and all objections to or applications concerning the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(b)  To hear and determine any and all applications for payments of fees and expenses made by any Professional pursuant to §§ 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Bankruptcy Code, and any and all objections thereto;

(c)  To hear and determine pending applications for the rejection, the assumption, or the assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)  To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands of appeals;

(e)  To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan;

(f)  To liquidate any disputed, contingent, or unliquidated Claims;

(g)  To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

[825440/3]

-35-

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To enforce the injunctions provided herein;

(j)     To enter and implement such orders as may be necessary or appropriate in furtherance of confirmation, implementation, or consummation of the Plan;

(k)     To enable the reorganized Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which Debtor or the reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between Debtor or the reorganized Debtor and any other party, including, but not limited to, any objections to claims, suits for avoidance and recovery of preferences or fraudulent transfers, and suits for equitable subordination of Claims;

(l)     To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(m)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated under the Plan;

(n)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan; and

(o)     To enter a final decree closing the Chapter 11 Case.

[825440/4]

**18.2   Abstention and Other Courts.**   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 case, Section 18.1 of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

DATED this 13th day of June, 2024.

SURGE TRANSPORTATION, INC.

By  _____
    Omar Singh
    Its President

- and -

**THAMES | MARKEY**

*/s/ Richard R. Thames*
By  _____
    Richard R. Thames

Florida Bar No. 0718459
50 N. Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
rrt@thamesmarkey.law

- and -

Stephen Leach, Esq.
David I. Swan, Esq.
HIRSCHLER FLEISCHER
1676 International Drive, Suite 1350
Tysons, Virginia 22102-4940
(703) 584.8900
sleach@hirschlerlaw.com
dswan@hirschlerlaw.com

Attorneys for Surge Transportation, Inc.

[825440/4]

-37-

## EXHIBIT A

**Class 2 Settlement Agreement Template**

## SETTLEMENT AGREEMENT AND RELEASE (                    )

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into this ____ day of _____, 2024 (the "Execution Date"), by and between **SURGE TRANSPORTATION, INC.** ("Surge") and _____ ("Factor") (collectively, the "Parties").

**Preliminary Statement.** Surge is a Jacksonville, Florida based trucking/freight broker licensed with the U.S. Department of Transportation and the United States Federal Motor Carrier Safety Administration specializing in sourcing extra truckload capacity during peak seasons and other periods of high demand.

On July 24, 2023 (the "Petition Date"), Surge filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in that certain case styled *In re Surge Transportation, Inc.*; United States Bankruptcy Court, Middle District of Florida, Jacksonville Division; Case No. 3:23-bk-1712-JAB (the "Bankruptcy Case").

According to a Proof of Claim filed on August 21, 2023, Factor was owed $_____ as of the Petition Date on account of freight transportation charges which it factored on behalf of its assignor freight carrier clients (the "Factor Claim").

In the ninety (90) days preceding the Petition Date, Factor received payments totaling $_____ from Surge, some or all of which may be avoidable as preferential transfers under 11 U.S.C. §§ 547(b) and 550.

Surge has filed a proposed plan of reorganization (the "Proposed Plan") to be funded by Triumph Financial Services, Inc., doing business as Triumph Business Capital ("Triumph"), or one of its affiliates, pursuant to which Surge will make available at least $2,150,000 in loan proceeds to be distributed to administrative, priority and general unsecured creditors in order of their priority. Triumph's exit funding will be contingent upon the entry of a bar order by the bankruptcy court, to be contained within an order confirming the Proposed Plan, (i) enjoining all carriers together with each of their assignees or financiers and all other persons who provided freight transportation services to Surge from seeking disgorgement or claiming ownership of any portion of the receivables which Surge factored through Triumph, and (ii) releasing all potential claims against Triumph by Factor and any other person acting or purporting to act on Factor's behalf.

In order to make the Proposed Plan successful and repay the exit facility loan, it is necessary that the motor carriers that contract with Surge in its capacity as a freight broker be given the option to factor their receivables through Factor. Accordingly, in exchange for a waiver of potential avoidance claims against Factor and its clients, and based on the terms of this Agreement, Factor shall allow its motor carrier clients to factor Surge invoices as an approved account debtor under terms and conditions no less favorable than any other account debtor.

In consideration of these premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## Agreement

1.    **Recitals.**  The recitals set forth in the Preliminary Statement are true and correct and deemed a part of this Agreement.

2.    **Approval of Surge Receivables for Funding.**  Effective immediately on the Execution Date, Factor will permit its carrier customers to factor Surge receivables subject the terms of its factoring agreement with Factor on the same credit terms which Factor provided prior to the Petition Date, providing a positive non-recourse credit rating. Factor agrees to provide Surge with evidence and confirmation of the positive non-recourse credit rating on a periodic basis, at the reasonable request of Surge.  For a period of one year after the Execution Date, Surge will pay Factor within seven (7) days from its approval of the carriers invoice, and after one year Surge will pay Factor pursuant to the normal credit terms of thirty (30) days.  Factor shall not revoke or modify its approval of Surge receivables for factoring absent a material payment default by Surge which is not cured within seven (7) days of written demand.

3.    **Reduction of Factor Claim.**  In consideration of the releases and other concessions provided herein, Factor agrees to reduce its claim against the bankruptcy estate by thirty percent (30%), contingent upon confirmation of the Proposed Plan.  Accordingly, Factor shall be deemed to have an Allowed General Unsecured Claim of $_____ for plan distribution purposes.  In an effort to help preserve Surge's relationship with its carriers, Factor agrees prospectively to forego seeking further recourse against its carrier clients on account of any Surge invoices factored prior to the Petition Date.

4.    **Waiver of Preference Claims.**  In consideration of the concessions contained herein, and subject to the provisions of paragraphs 8 and 9 below, Surge, for itself and on behalf of its bankruptcy estate, waives all avoidance claims which may be asserted against Factor pursuant to 11 U.S.C. §§ 544, 547, 548, 549 and 550.

5.    **Damages for Breach.**  In the event Factor shall have materially breached its obligations hereunder within two (2) years of the Petition Date, the release of avoidance claims provided in paragraph 5 above shall be deemed rescinded *ab initio,* and all of Surge's rights to pursue such claims shall be automatically reinstated.

6.    **Consent to Bar Order in Favor of Triumph.**  Surge's ability to fund its exit from the Chapter 11 process is dependent upon financing from Triumph.  As a condition to funding that exit facility, Triumph will require the issuance of a bar order in the Bankruptcy Case enjoining any carrier or factor from asserting a claim of ownership to all or any part of the receivables which Surge factored though Triumph.  Factor consents to the entering of such a bar order and injunction on the condition that Triumph fund the exit facility described in the preliminary statement.

7.    **Surge's Obligations.**  Surge believes that prompt confirmation of the Proposed Plan will best facilitate Surge's business and financial restructuring and is in the best interests of Surge's creditors and other parties in interest.  Accordingly, Surge hereby expresses its intention to seek prompt approval of the Proposed Plan outlined herein.  Surge agrees:

a.    to use commercially reasonable efforts to file and obtain final approval of the Proposed Plan, solicit the requisite votes in favor of, and to obtain confirmation of the Proposed Plan to the extent possible within sixty (60) days of this Agreement;

b.    to otherwise use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things proper or advisable to consummate and make effective the transactions contemplated by the Proposed Plan as they pertain to Factor;

c.    to allow Factor access to its Monthly Operating Reports filed in the Bankruptcy Case until the Proposed Plan or any subsequent plan has been substantially consummated and has gone effective; and

d.    to direct all carrier payments through Triumph, or a similarly situated payment processing service or independent third party.

8.    **Intent.**  This Agreement is intended to settle disputes between the Parties.  While the Parties agree herein to support approval of the Proposed Plan, this Agreement is not and shall not be deemed to be a solicitation for consent to the to be developed plan of reorganization in contravention of applicable non-bankruptcy law or § 1125(b) of the Bankruptcy Code.

9.    **Conditions Precedent to Release.**  The preference waiver and claim reduction contained herein are conditioned upon and shall not be deemed effective until the following events have occurred and are no longer subject to rehearing or appeal:

a.    The Proposed Plan containing all material terms outlined herein shall have been confirmed;

b.    Triumph shall have funded the exit facility in an amount not less than $2,150,000; and

c.    Surge's Proposed Plan shall have been substantially consummated.

10.    **Termination Events Applicable to All Parties.**  This Agreement may be terminated prior to the confirmation of Surge's Proposed Plan upon the occurrence of any of the following events (each, a "Termination Event"):

        **a.**      By either Party if the other Party shall have breached any of its material obligations under this Agreement;

        **b.**      By Factor if Surge's Proposed Plan is not consistent in all material respects with this Agreement;

        **c.**      By either Party, if the Bankruptcy Case shall have been dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or an interim or permanent trustee, an examiner with powers beyond the duty to investigate and report (as set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed to oversee or operate Surge in the Bankruptcy Case or if Surge files a motion seeking any of the foregoing relief; and

        **d.**      By either Party, upon entry of an order by the bankruptcy court denying confirmation of the proposed plan of reorganization.

      **11.**    **Representations and Warranties.**  Each of the Parties represents and warrants to each other Party, severally but not jointly (and solely with respect to itself), that the following statements are true, correct and complete as of the date hereof:

        **a.**      **Corporate Power and Authority.**  It is duly organized, validly existing, and in good standing under the laws of the state or country of its organization, and has all requisite corporate, partnership or other power and authority to enter into this Agreement and to carry out the transactions contemplated by, and to perform its respective obligations under, this Agreement, including, but not limited to, the express authorization of any consent of each motor carrier assignee who has assigned rights to Factor;

        **b.**      **Authorization.**  The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, partnership or other action on its part;

        **c.**      **Binding Obligation.**  This Agreement has been duly executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable in accordance with the terms hereof, subject to bankruptcy court approval; and

        **d.**      **No Conflicts.**  The execution, delivery and performance (when such performance is due) of this Agreement do not and shall not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries or its certificate of incorporation or bylaws or other organizational documents or those of any of its subsidiaries, or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

      **12.**    **Miscellaneous.**

      **a.**    <u>**Notices.**</u>  Any notice required or desired to be served, given or delivered under this Agreement shall be in writing, and shall be deemed to have been validly served, given or delivered if provided by personal delivery, or upon receipt of email delivery, as follows:

        i.     if to Surge, to:

                Surge Transportation, Inc.
                Attn: Omar Singh, President
                7077 Bonneval Road, Suite 550
                Jacksonville, Florida 32216

        ii.    if to Factor, to:

      **b.**    <u>**Governing Law; Jurisdiction.**</u>  This Agreement shall be governed by and construed in accordance with the internal laws of the state of Florida, without regard to any conflicts of law provision which would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the bankruptcy court for the Middle District of Florida, Jacksonville Division.

      **c.**    <u>**Headings.**</u>  The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

      **d.**    <u>**Interpretation.**</u>  This Agreement is the product of negotiations of the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.

      **e.**    <u>**Successors and Assigns.**</u>  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, heirs, transferees, executors, administrators and representatives.

      **f.**    <u>**No Third-Party Beneficiaries.**</u>  Except for Triumph who is expressly intended by the Parties to be a third-party beneficiary, having all the rights to

enforce this Agreement, this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary hereof.

g.      **No Waiver of Participation and Reservation of Rights.**  Except as expressly provided in this Agreement and in any amendment between the Parties, nothing herein is intended to, or does, in any manner waive, limit, impair or restrict the ability of each Party to protect and preserve their rights, remedies and interests, including without limitation, its claims against the other Party or its full participation in the Bankruptcy Case.

h.      **No Admissions.**  This Agreement shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever.  Each of the Parties denies any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert.  No Party shall have, by reason of this Agreement, a fiduciary relationship in respect of any other Party or any party in interest in the Bankruptcy Case, and nothing in this Agreement, expressed or implied, is intended to or shall be so construed as to impose upon any Party any obligations in respect of this Agreement except as expressly set forth herein.

i.      **Counterparts.**  The Parties may execute this Agreement in multiple counterparts Factor, each of which constitutes an original, and all of which, collectively, constitute only one agreement.  The signatures of all of the Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by facsimile or by electronic counterpart such as a pdf. document is as effective as executing and delivering this Agreement in the presence of the other parties to this Agreement.

j.      **Representation by Counsel.**  Each Party acknowledges that it has been represented by counsel in connection with this Agreement and the transactions contemplated herein. Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

k.      **Entire Agreement.**   This Agreement constitutes the entire agreement between the Parties and supersede all prior and contemporaneous agreements, representations, warranties and understandings of the Parties, whether oral, written or implied, as to the subject matter hereof.

IN WITNESS WHEREOF THE UNDERSIGNED HAVE CAUSED THIS AGREEMENT TO BE DULY EXECUTED AND DELIVERED BY THEIR RESPECTIVE, DULY AUTHORIZED OFFICERS AS OF THE DATE FIRST ABOVE WRITTEN.

**SURGE TRANSPORTATION, INC.**          **[FACTOR]**


By _____          By _____
         Omar Singh                              [Name]
         Its President                            [Title]


17290629.4  048588.00001